751 P.2d 1385

STATE of Arizona, Appellee,

v.

Ervin Duane WILLCOXSON, Appellant.

No. 1 CA–CR 10498.

Court of Appeals of Arizona,
Division 1, Department C.

Dec. 17, 1987.

Review Denied April 19, 1988.

Robert K. Corbin, Atty. Gen. by William J. Schafer III, Chief Counsel, Criminal Div., and Joseph T. Maziarz, Asst. Atty. Gen., Phoenix, for appellee.

Hiner, Crowe, & Scott, P.A. by Michael B. Scott and Maurie L. White, Phoenix, for appellant.

OPINION

KLEINSCHMIDT, Judge.

Ervin Duane Willcoxson was charged with one count of burglary and one count of sexual assault. The matter was tried to a jury, which found him guilty as charged.

The court sentenced him to the presumptive terms of five and seven years, respectively, to run concurrently.

The facts may be summarized as follows. The defendant had just moved into the victim's neighborhood in Chino Valley, Arizona. The victim was married with two children. Her husband worked in the Phoenix area three to four days a week and stayed there during the nights of the days he worked.

The victim and defendant met when she was horseback riding. Both shared an interest in horses. They went riding together on one occasion before the incident. At one point during the ride, the defendant put his hand on the victim's thigh, but she told him she was not interested in that sort of relationship.

Later, on the day of the incident, the defendant brought the victim a bale of hay for her horse, and she returned the favor by leaving a thank-you note and a six-pack of beer at his house. The defendant went over to the victim's house in the early evening of that day, but the victim told him she was busy with her children. Nothing was said about the defendant coming back later.

The defendant went to a bar, where he consumed four to six beers over the course of the evening. After escorting a woman home from the bar, he went to the victim's house about midnight. He knocked on the door, and the victim opened it. According to the victim, the defendant wanted to come in, but she told him he could not. She said that he pushed through the door, grabbed her arms and told her he was going to make love to her. She pleaded that he not do it and told him if he did it would be rape. He shoved her to the floor and got on top of her. She tried to hit him with a poker from the fireplace, but he grabbed her arm and smashed it against the ground until she let go. The victim was afraid to make noise, lest her two children wake up and become involved. The defendant proceeded to have intercourse with the victim. As he left, he told her "[n]ow, don't call the police."

When the police arrested defendant the next morning, he told them that he had intercourse with the victim, but that it was consensual. He said the victim was somewhat unwilling to have intercourse until they had engaged in foreplay. He also said that, at one point while they were having intercourse, the victim sat up because she thought the children were awake, but then laid back down and they resumed intercourse.

## INSTRUCTION ON WITHDRAWAL OF CONSENT

■ After the jury had begun deliberation, they sent the judge the following note:

> If at any time during the act of sexual intercourse one or the other of the consenting adults no longer consents to the continuation of the act, is it at that time considered sexual assault, if continued?

The defendant then asked that the jury be instructed that once an act of consensual intercourse has begun it is not possible to withdraw consent. Instead, the court responded to the jury as follows:

> 1. You must decide the case using the instructions that the court has already given you.
>
> 2. The court may not comment upon the evidence.

We do not have to decide whether it is the law of this state that consent once given cannot be withdrawn. The defendant's defense was that he had the victim's consent from beginning to end. He did testify that, at one point, the victim thought she heard the children and raised up really fast, but that afterwards the intercourse continued. The only other unwillingness testified to by defendant was that the victim wanted more foreplay before proceeding to intercourse. Defendant's counsel theorized that she later decided to claim she had been raped because she feared the children might have seen her in the act of intercourse. None of this amounts to *evidence* of an attempted withdrawal of consent after penetration. The victim's version of events was that there had never been any consent.

In oral argument on appeal, defendant's counsel pointed out that the jury might have believed that neither the defendant nor the victim was telling the whole truth about the incident, and believed that the victim initially consented to intercourse and then reneged when she feared her children might enter the room. This is based upon pure supposition. The defendant cites no authority for the proposition that it is necessary to instruct on the law under these circumstances. The court did not err in refusing to instruct on a legal theory not supported by the evidence. *State v. Blankenship*, 99 Ariz. 60, 68, 406 P.2d 729, 737 (1965); *State v. Miller*, 129 Ariz. 42, 628 P.2d 590 (App.1981).

## DUTY TO RESIST

■ Defendant's next issue is that the trial court erred by refusing to give defendant's requested instruction regarding the victim's duty to resist. The instruction proposed reads:

The crime of Sexual Assault additionally requires proof of either of the following circumstances:

1. The woman resists, but her resistance is overcome by force or violence; or

2. The woman is prevented from resisting by threats of immediate and great bodily harm accompanied by the apparent ability to carry out those threats.

When a woman reasonably determines that she cannot resist without peril to her life or safety, no resistance is required, and if she submits to an act of sexual intercourse, induced by fear that it is necessary to save her from violence or death, her conduct under such circumstances does not constitute consent to the act.

In the absence of intimidation, the woman must resist to the utmost of her ability and such resistance must continue until the offense is complete, or it is not sexual assault.

In such a case, resistance or opposition by mere words is not enough; the resistance must be by acts, and must be reasonably proportionate to the strength of the woman.

The state responds that under the current Arizona Criminal Code, there is no duty to resist. We agree.

As noted by the state, in *State v. Taylor*, 135 Ariz. 262, 660 P.2d 863 (App.1983), division two of this court considered whether a trial court erred by refusing a duty to resist instruction. The court noted that the prior statute, which defined rape, A.R.S. § 13–611, in part referred to resistance, but that "[n]owhere does our new code contain any reference to resistance." *Id.* at 264, 660 P.2d at 865. The court concluded that the law contained in the requested instruction was no longer viable. We concur with division two. The whole question of resistance has simply devolved into one of whether the victim consented. Therefore, the trial court did not commit error by refusing to give the legally erroneous instruction.

## WILLITS INSTRUCTION

■ There was testimony from the victim, a friend who saw her after the incident, police officers, and the doctor who examined the victim after the incident that there were various abrasions and marks on the victim's body. While the victim was at the hospital, the police photographed these abrasions using black and white film. Testimony about these marks and the photographs depicting them was admitted in evidence. The defendant's lawyer addressed the issue in the following manner in his closing argument:

Ladies and gentlemen, you look at those pictures, when you take those pictures back to the jury room, look at those. Look at the extent of those, these supposedly very serious injuries and so on. You got a little scratch here, and you have got a little scratch there, and I submit to you that that comes from— those scratches are rug burns from making love on the carpet in [the victim's] house. Look at those pictures also to see if there's any sort of anything wrong with her, with her arm, to see if there's anything wrong with her neck. It's just

not there. Those pictures, the evidence does not show, does not support the violence, the aggressiveness and everything else that the prosecutor and [the victim] has tried to show throughout this trial. Those pictures just don't support it.

The attorney for the state rebutted this by arguing:

Her story is supported by the evidence, ladies and gentlemen. Unfortunate, it's unfortunate that the photographs weren't color. These injuries would have shown up much better. Pat Godfrey told you that. And Dr. Beck in so many words told you that. And he didn't say that looks just like what I saw. That's not what he said, ladies and gentlemen. He said he saw it a lot more vividly when he saw her in person. Anybody knows what a photograph shows whether it be black or white or color.

The defendant contends that the police should have taken color photographs to portray the abrasions more accurately. Had they done so, he argues, the jury would have seen that the abrasions and the swelling of the wrist were either nonexistent or so minor as to undercut the state's case. Since the state's evidence on this point was not of the best quality, the defendant insists, relying on *State v. Willits*, 96 Ariz. 184, 393 P.2d 274 (1964), that an instruction should have been given to the effect that if the jury found that the state had failed to gather evidence, the quality of which is in issue, the jury may infer that the true nature of that evidence would be against the state's interest.

The state argues that the defendant actually benefitted from the poor quality of the police photographs because color photos would have been more vivid and would have shown the injuries to have been more serious than they appeared depicted in black and white. The best authority for the state's argument is found in *State v. Perez*, 141 Ariz. 459, 687 P.2d 1214 (1984). In that case, the defendant was charged with the robbery of a convenience store. The central issue was the identity of the perpetrator. The police had failed to seize and preserve a videotape of the robbery,

and the defendant insisted that he was therefore entitled to a *Willits* instruction. The supreme court observed that, for a defendant to be entitled to a *Willits* instruction, he must show actual prejudice. This, the court said, had not been demonstrated because the defendant presented no evidence that he would have been acquitted if the videotape had been presented. The victim of the robbery had seen both the videotape of the robbery and the defendant in person and his identification was unshakable.

While we could rest our decision on *Perez*, we perceive a problem with that approach in this case. How can a defendant prove prejudice without the very piece of evidence that is central to the issue? In the case before us, the defendant's claim is that the color photographs would have depicted the abrasions more accurately and that the more accurate depiction would have benefited the defendant because the jury would have seen that the abrasions were slight or nonexistent. Thus, goes the argument, he was prejudiced by a lack of color photographs. The state's argument does not address this conundrum. Nonetheless, we do not believe the defendant is entitled to a reversal.

In *Perez*, the supreme court also observed that whether the police failed to procure evidence which they should have procured and whether the defendant was actually prejudiced thereby are questions for the trial court, whose decision will not be disturbed absent a clear abuse of discretion. *Id.* at 464, 687 P.2d at 1219. The trial judge in this case stated his reasons for refusing to give a *Willits* instruction. While he mentioned the *Perez* rationale, he also observed that the claim was that the state just did not do as good a job as it might have. Indeed, in almost every case prosecuted, the claim can be made that the investigation could have been better. We do not believe that a failure to pursue every lead or gather every conceivable bit of physical evidence will require a *Willits* instruction. Whether such an instruction is necessary depends on a judgment as to how central the issue is to the case and how much better or more important the

"missing" evidence might have been than the evidence that was introduced.

We have reviewed the testimony concerning the abrasions, the photographs of them, and the arguments of counsel. The trial judge did not abuse his discretion in refusing the *Willits* instruction. We say this for several reasons. First, both the police and the doctor described the abrasions as rather minor marks on the victim's body. There was nothing about these descriptions that was particularly inconsistent with the defendant's theory that the marks, for the most part, were rug burns acquired during consensual intercourse. Nor did these witnesses notice any swelling of the wrist that the victim and her friend described and, indeed, it is difficult to discern any swelling of the wrist from the photograph. Thus, the state of the evidence left the defendant with a credible argument on the issue of the severity of the marks and what they signified. He ably exploited that argument.

Second, the photographs that were taken provide a satisfactory basis from which the jurors, applying ordinary experience and common sense, could have formed an opinion about the nature and degree of the injuries. In four out of six of the photographs minor abrasions are discernable and, coupled with the descriptions the witnesses provided, it is not particularly difficult to imagine what they actually must have looked like. The defendant received a fair trial in this case, and we do not believe that a minor failure on the part of the police to secure the very best evidence should require a reversal.

## IMPOSITION OF PRESUMPTIVE SENTENCES

■ The defendant argues that the trial judge erred in imposing presumptive sentences when he found the existence of three mitigating factors and one aggravating factor. The mitigating factors were no prior felonies, support from his family, and a diminished capacity to appreciate wrongfulness. The aggravating factor was the harm to the victim. The trial court found that these factors balanced out. We find no error.

The sentence was within statutory limits, and we do not disturb such sentences unless a clear abuse of discretion appears. *E.g., State v. Williams,* 134 Ariz. 411, 413, 656 P.2d 1272, 1274 (App.1982). A court need not state factors supporting a presumptive sentence. *State v. Bly,* 127 Ariz. 370, 373, 621 P.2d 279, 282 (1980). In balancing aggravating and mitigating factors, the trial court is not required to make its decision based upon the mere numbers of aggravating or mitigating circumstances. *E.g., State v. Marquez,* 127 Ariz. 3, 7, 617 P.2d 787, 791 (App.1980).

The trial court here obviously carefully considered the individual circumstances of the defendant. He particularly noted that the strongest mitigating factor, a diminished capacity to appreciate wrongfulness, was not "so much a mitigating factor that it ought to call for a mitigated sentence ..." We find no clear abuse of discretion in the sentence.

Pursuant to A.R.S. § 13–4035, we have searched the record for fundamental error and have found none. For the above reasons, the convictions and sentences are affirmed.

SHELLEY, P.J., and GRANT, J., concur.