NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

BRANDON MICHAEL FEATHERSTON, *Appellant*.

No. 1 CA-CR 13-0879
FILED 10-16-2014

Appeal from the Superior Court in Maricopa County
No. CR2012-159493-001
The Honorable Jo Lynn Gentry, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Terry M. Crist, III
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Louise Stark
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Patricia A. Orozco delivered the decision of the Court, in which Presiding Judge Randall M. Howe and Judge Maurice Portley joined.

---

**O R O Z C O**, Judge:

¶1        Brandon Featherston appeals from his conviction and sentence for aggravated assault, a class three felony.  Specifically, Featherston challenges the trial court's denial of his request for a *Willits*[1] jury instruction.  For the following reasons, we affirm the conviction and sentence.

**FACTS AND PROCEDURAL BACKGROUND**

¶2        On the evening of November 20, 2012, I.S. and his wife in their backyard.  At approximately 11:30 p.m., they heard squealing tires followed by a thud.  Suspecting a car accident had occurred, I.S. went to investigate and proceeded around the corner, where he was met by an unidentified man whom he assumed was a neighbor.  As he went around the corner, he observed a white Ford Mustang sitting on the curb and skid marks that began over the curb and went across his neighbors' yards**.**  The tires on the car's left side were blown out from going over the curb and the rims were damaged.

¶3        The unidentified man remained behind I.S. as he approached the vehicle, where he saw two men standing on opposite sides of the car and passing an alcoholic beverage back and forth over the top of the car.  Moreover, he observed that Featherston, the driver, had a pocket knife in his hand.  I.S. saw Featherston "fondl[e] the knife in his hand" and "twist[] it open and shut a little bit."  I.S. told Featherston there was no need for the knife and he should put it away.  Featherston then approached I.S. with the knife as if he was "going to essentially try to attack" I.S. with the knife.  I.S. recalled the second man by the vehicle also told Featherston to put the knife away.  Feeling threatened, I.S. placed his hand behind his back as if to grab a hidden weapon, which caused Featherston to put the knife away and retreat.  I.S. told the two men that they should not return to the car that night and watched them walk away from the vehicle.  I.S. did not discuss

---

[1] *See State v. Willits*, 96 Ariz. 184, 393 P.2d 274 (1964).

the incident with the unidentified witness because he "felt like the incident had been defused," and I.S. has not seen or spoken to him since that night.

¶4 When he returned home, I.S. told his wife what occurred. He subsequently returned to the accident scene approximately five to ten minutes later and found the two men had also returned to the car. Concerned about a potential threat, I.S. called 911. Featherston fled when the police arrived, and a search began. Police asked I.S. to provide a written statement recounting the night's events. I.S. also verbally answered the questions of police officer Robert Sheehan, who documented I.S.'s responses in his report. I.S. "got maybe a sentence into [his written] statement," when he was asked to accompany officers to identify an apprehended suspect. I.S. identified the suspect as the person who pointed the knife at him and the suspect was subsequently identified as Featherston. I.S. then completed his written statement.

¶5 Featherston was charged with aggravated assault and the case proceeded to trial. At trial, an officer testified that I.S's written statement was lost and could not be located. Featherston asked for a *Willits* instruction arguing "[t]he lack of this evidence deprives Mr. Featherston of the ability to affirmatively prove that the victim in this case is not being truthful." Featherston argued there was an inconsistency in I.S.'s statements because he testified about the unidentified witness at a prior hearing despite this witness not being mentioned in the police report. Moreover, Featherston argued that the missing police report rendered him unable to cross-examine I.S. about the statement and unable to impeach I.S. on inconsistencies with the statement and I.S.'s recollection of the events that occurred.

¶6 Featherston's proposed *Willits* instruction read:

> In this case, a witness statement existed of [I.S.]. If you find that the plaintiff, the state of Arizona, has lost, destroyed, or failed to preserve evidence whose contents or quality are important to the issues in this case, then you should weigh the explanation, if any, given for the loss or unavailability of the evidence. If you find that any such explanation is inadequate, then you may infer that the evidence is against the State's interest, which may create a reasonable doubt about the defendant's guilt.

The State argued that the instruction was unwarranted because "the defense has failed to present evidence explaining why the missing victim statement would contain evidence of any exculpatory value."

**¶7**		The trial court denied Featherston's requested instruction and the jury found him guilty of aggravated assault. Featherston timely appealed and we have jurisdiction under Arizona Revised Statutes (A.R.S.) §§ 13-4031, 13-4033, and 12-120.21 (West 2014)[2].

## DISCUSSION

**¶8**		We review the denial of a *Willits* instruction for an abuse of discretion. *State v. Speer*, 221 Ariz. 449, 457, ¶ 39, 212 P.3d 787, 795 (2009). A trial court does not abuse its discretion by refusing to give a *Willits* instruction when the defendant fails to establish that the lost evidence would have the tendency to exonerate him. *Id.* at ¶ 40.

**¶9**		The Arizona Supreme Court has established that "if the state fails to preserve evidence that is potentially exonerating, the accused might be entitled to an instruction informing the jury that it might draw an adverse inference from the state's action." *State v. Glissendorf*, 235 Ariz. 147, 149, ¶ 1, 329 P.3d 1049, 1051 (2014) (citing *Willits*, 96 Ariz. at 191, 393 P.2d at 279). To be entitled to a *Willits* instruction, Featherston "must prove that (1) the state failed to preserve material and reasonably accessible evidence that could have had a tendency to exonerate [him] and (2) there was resulting prejudice." *See State v. Smith*, 158 Ariz. 222, 227, 762 P.2d 509, 514 (1988). "To show that evidence had a 'tendency to exonerate,' the defendant must do more than simply speculate about how the evidence might have been helpful." *Glissendorf*, 235 Ariz. at 150, ¶ 9, 329 P.3d at 1052. Instead, a defendant must demonstrate that the missing evidence would have had evidentiary value. *Id.* Whether such an instruction is necessary depends on the issue's centrality to the case and whether the court can determine that the "missing" evidence might have been much better or more important than the evidence that was introduced. *State v. Willcoxson*, 156 Ariz. 343, 346-47, 751 P.2d 1385, 1388-89 (App. 1987).

**¶10**		At trial, Featherston argued he was entitled to a *Willits* instruction because I.S.'s written statement could have "some sort of exculpatory information in there, because [I.S.] could have wr[itten] in his

---

[2]		We cite to the current version of applicable statutes when no revisions material to this decision have since occurred.

witness statement what the [unidentified witness] was doing." The trial court refused the proposed *Willits* instruction, finding that the defendant was asking the court to speculate that there was potentially something exculpatory in the statement and that Featherston's argument that the victim's statement could be "a hundred percent different" from his testimony was "a stretch."

¶11 On appeal, Featherston contends he "did more than speculate" because he showed that the police failed to reveal "what [I.S.] may have told them" about the unidentified witness. Featherston argues that a *Willits* instruction was warranted because the statement "might have contained exculpatory information, such as what the [unidentified witness] did or said, things [I.S.] forgot or omitted at trial, or impeachment."

¶12 Although Featherston can prove that the state failed to preserve the written statement, he cannot show that the report would have exonerated him or that he suffered prejudice. Featherston's argument appears to rest on the possibility that I.S., in his written statement, mentioned the unidentified witness who was not mentioned in the police report. However, it is unclear how such a statement would exonerate Featherston. At best, Featherston's argument is speculative.

¶13 We have previously held that a trial court does not abuse its discretion by refusing to give a *Willits* instruction when a defendant merely speculates that lost evidence would have supported his theory of the case. *See State v. Dunlap*, 187 Ariz. 441, 464, 930 P.2d 518, 541 (App. 1996) (holding that defendant was not entitled to an instruction when the specific contents of the documents removed from a file were unknown and there was no evidence they contained exculpatory information). Moreover, Featherston cannot prove he was prejudiced. He was provided a recording of I.S.'s 911 call, a copy of the police report that contained statements I.S. made the same evening he wrote the statement at issue, and he also cross examined I.S. at trial. Featherston has not demonstrated that the written statement contained exculpatory or impeachment evidence with respect to I.S.'s recollection of the events that occurred. *See Willcoxson*, 156 Ariz. at 346-47, 751 P.2d at 1388-89. Thus, we find the trial court did not abuse its discretion by refusing to give the jury a *Willits* instruction.

**CONCLUSION**

**¶14**      For the above stated reasons, we affirm Featherston's conviction and sentence.



Ruth A. Willingham · Clerk of the Court
FILED: gsh