NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

FRANCISCO CONTRERAS, *Appellant*

No. 1 CA-CR 14-0529
FILED 11-03-2015

Appeal from the Superior Court in La Paz County
No. S1500CR201200022
The Honorable Lee Frank Jantzen, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Tucson
By Tanja K. Kelly
*Counsel for Appellee*

Carr Law Office, PLLC, Parker
By Sandra Carr
*Counsel for Appellant*

_____

**MEMORANDUM DECISION**

Presiding Judge Kenton D. Jones delivered the decision of the Court, in which Judge Samuel A. Thumma and Judge Peter B. Swann joined.

_____

**J O N E S**, Judge:

**¶1**        Francisco Contreras appeals his convictions and sentences for one count of attempted first-degree murder and two counts of aggravated assault, all dangerous offenses.  For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**

**¶2**        In January 2012, Contreras climbed onto a truck's running board at a truck stop in Ehrenberg, told the driver he was going to kill him, and, using a knife, slashed the driver's forearm and stabbed him in the abdomen.  Contreras was charged with one count of attempted first-degree murder and two counts of aggravated assault.

**¶3**        At trial, Contreras testified "they" had been after him for years, and the driver had threatened to kill Contreras's son.  The driver testified, however, he had never met Contreras and had not threatened him or his son in any way.  Contreras admitted to one of the responding officers that he used methamphetamine on the weekends and had used it "recent[ly]."  Contreras also admitted on a jail intake form the day of the stabbing that he had used methamphetamine, cocaine, and marijuana two days prior.

**¶4**        Contreras was initially found incompetent to stand trial and was committed to Yavapai County's Restoration to Competency Program (the Program) in May 2012.  In December 2013, the Program reported Contreras was mentally competent to proceed to trial notwithstanding diagnoses of delusional disorder and methamphetamine abuse in sustained remission.  In April 2013, after additional Rule 11 evaluations were completed, the trial court found Contreras was competent to stand trial.

**¶5**        At trial, defense counsel raised a guilty except insane defense. The experts agreed Contreras suffered from a delusional disorder; however, the State's witnesses opined Contreras knew his actions were wrongful at the time he engaged in them.

**¶6**  Defense counsel sought a directed verdict on the attempted murder charge, but the trial court found sufficient evidence had been presented by the State for all counts to go to the jury. The jury convicted Contreras as charged, and the court sentenced him to slightly mitigated concurrent prison terms of ten years for attempted murder and seven years for each count of aggravated assault. Contreras filed a timely notice of appeal, and we have jurisdiction pursuant to Arizona Revised Statutes (A.R.S.) sections 12-120.21(A)(1),[1] 13-4031, and -4033(A)(1).

## DISCUSSION

**¶7**  Contreras argues (1) the trial court deprived him of his right to a twelve-person jury; (2) he was incompetent to stand trial; (3) his statements at the time of his arrest were not voluntary because of his incompetence; and (4) the absence of a *Willits* instruction was reversible error. We address each argument in turn.

## I. Contreras Was Not Entitled to a Twelve-Person Jury.

**¶8**  Contreras argues the trial court committed reversible error in seating an eight-member jury for a case in which a sentence of thirty years or more was authorized by law. *Compare* Ariz. Const. art. 2, § 23 ("Juries in criminal cases in which a sentence of death or imprisonment for thirty years or more is authorized by law shall consist of twelve persons."), *and* A.R.S. § 21-102(A) (providing for twelve-person jury where available punishment is sentence of death or imprisonment for thirty years or more), *with* A.R.S. § 21-102(B) (providing for an eight-person jury "in any court of record of any other criminal case"). We review *de novo* whether the court improperly seated an eight-person jury. *State v. Kuck*, 212 Ariz. 232, 233, ¶ 8 (App. 2006) (citing *State v. Smith*, 197 Ariz. 333, 335, ¶ 2 (App. 1999)).

**¶9**  The court ordered Contreras be tried by an eight-person jury based upon its finding that the maximum sentence Contreras could receive, even considering all aggravating factors, was twenty-one years because the State had stipulated the sentences would run concurrently.[2] And, the court

---

[1]  Absent material revisions from the relevant date, we cite a statute's current version.

[2]  Defense counsel argued the court should not take this into consideration but should base the number of jurors on the maximum sentences "added together."

ultimately sentenced Contreras to concurrent prison terms, the longest of which was ten years.

**¶10**     Our supreme court has held that an eight-member jury may deliberate on offenses that expose a defendant to a sentence of thirty years or more if, "by the time the case is submitted, a sentence of thirty years or more is no longer 'authorized by law.'" *See State v. Soliz*, 223 Ariz. 116, 119, ¶ 13 (2009) (citing Ariz. Const. art. 2, § 23). In *Soliz*, the court determined the State "effectively waived its ability to obtain a sentence of thirty years or more" by failing to request a jury of twelve persons. *Id.* The court also found the trial court "affirmed this by failing to empanel a jury of twelve." *Id.* at 120, ¶ 16. Where the State fails to request a twelve-person jury and the court does not empanel a twelve-person jury, "[a]s long as a lesser sentence may legally be imposed for the crime alleged, . . . a sentence of thirty years or more is no longer permitted and . . . the twelve-person guarantee . . . is not triggered." *Id.*

**¶11**     Here, just as in *Soliz*, the State effectively waived its ability to obtain a sentence of thirty years or more by agreeing to an eight-person jury, and the trial court affirmed the waiver by empaneling an eight-person jury. Moreover, the State's stipulation that the sentences be concurrent and the court's implicit agreement further support upholding the empanelment of an eight-person jury. *See State v. Thorne*, 193 Ariz. 137, 138 (App. 1997) (affirming a conviction rendered by eight-person jury under similar circumstances). Therefore, the court did not err by empaneling a jury of eight members.

## II.     The Trial Court Did Not Err in Finding Contreras Competent to Stand Trial.

**¶12**     Contreras next argues he was not competent to stand trial. Due process requires Arizona courts to "observe procedures adequate to protect a defendant's right not to be tried or convicted while incompetent to stand trial." *Drope v. Missouri*, 420 U.S. 162, 172 (1975). The test for competency is "whether [the] defendant 'has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding, and whether he has a rational as well as a factual understanding of the proceedings against him.'" *State v. Amaya-Ruiz*, 166 Ariz. 152, 161-62 (1990) (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960)). The competency inquiry focuses "'on an extremely narrow issue: whether whatever is afflicting the defendant has so affected his present capacity that he is unable to appreciate the nature of the proceedings or to assist his counsel in conducting his defense.'" *Id.* at 162 (quoting *State v. Steelman*, 120 Ariz. 301, 315 (1978)). We review a competency determination for an abuse of

discretion. *State v. Moody*, 208 Ariz. 424, 444, ¶ 55 (2004) (citing *State v. Silvas*, 91 Ariz. 386, 391 (1962)). We will affirm where reasonable evidence supports the trial court's finding that the defendant was competent. *State v. Glassel*, 211 Ariz. 33, 44, ¶ 27 (2005) (citing *State v. Brewer*, 170 Ariz. 486, 495 (1992)).

**¶13** Based upon initial Rule 11 evaluation results stating that Contreras's paranoia and delusions prevented him from assisting his attorney, the trial court ordered he be committed to a competency restoration program in May 2012. However, in December 2012, the director of the Program concluded Contreras's competency had been restored. While one doctor conducting a subsequent re-examination concurred with the director's conclusion, others concluded Contreras remained incompetent because his delusions regarding the stabbing prevented him from assisting his attorney in his defense. In April 2013, after reviewing the Rule 11 examination results, the trial court found Contreras competent to stand trial, reasoning Contreras's "misunderstanding about what was going on . . . at the time the offense was committed" was typical in a defendant raising an insanity defense but did not deprive him of competency to stand trial.

**¶14** On the first day of trial in April 2014, defense counsel moved for another Rule 11 competency evaluation, arguing Contreras lacked the ability to assist in his defense because "he does not understand that the only meaningful defense is a plea of 'guilty except insane,' . . . [nor] that his real options are to take the plea agreement and serve another twenty-one month[s] or go to trial and spend over seven years in prison or the State mental hospital." The trial court denied the motion, reasoning Contreras's desire "to defend himself in a different way" than what defense counsel believed was in his best interests did not mean he was incompetent.

**¶15** The trial court did not abuse its discretion in concluding Contreras was competent to stand trial. The court relied in part on the opinion of the competency restoration program director that Contreras had become competent during his six-month stay in the competency restoration program and was able to assist his attorney in defending himself. The director reported Contreras was able to identify and discuss the charges against him as well as the circumstances surrounding the stabbing. The director also reported Contreras's "delusional ideations" had "substantially lessened" since his arrival. At one point during his competency restoration program, Contreras was asked about various plea agreements and stated, "I'm going to plead 'guilty' because I did it." The director's report constitutes sufficient evidence to sustain the court's finding that Contreras was competent to stand trial.

¶16        The trial court also relied upon a Rule 11 examination doctor who concluded Contreras was competent to stand trial:

> [E]ven though the defendant has a delusional disorder that persists[,] it is not significantly different from any defendant who maintains his innocence even though there is overwhelming evidence against him.  In this case the defendant accepts responsibility for his behavior.  He does not realize his behavior was based on disordered thinking and misperception of reality secondary to a mental illness.  However, he can clearly explain the motivations for his behavior and work with his attorney in that regard.

The examining doctor also noted, "When specifically queried about events that led him to jail he was able to entertain, at least minimally, the possibility he might have assaulted the wrong individual."  Although a different examining doctor concluded that Contreras's delusions regarding the circumstances surrounding the stabbing prevented him from assisting in his own defense, the court was free to reject this opinion in favor of finding Contreras competent.  Reasonable evidence supported this finding, and therefore, the court did not abuse its discretion.

¶17        Contreras also argues the trial court erred in failing to order further competency evaluations at the request of his trial counsel.  The court is required to appoint experts to conduct a competency evaluation "[i]f the court determines that reasonable grounds for an examination exist."  Ariz. R. Crim. P. 11.3(a).  The court's discretion in making this determination is broad.  *See State v. Salazar*, 128 Ariz. 461, 462 (1981) ("We have repeatedly held that the trial court has broad discretion in determining if reasonable grounds exist [to order a Rule 11 examination], and unless there has been manifest abuse in this discretion, the trial court will be upheld.") (citations omitted).  Here, the court reasoned:

> [Contreras's] disagreement with his lawyer about whether or not he should take the deal is not . . . evidence that he's struggling or that he's incompetent. . . . He wants to defend himself in a different way.  That doesn't mean he's incompetent.  It means that he wants to defend himself in a different way.

The court acted well within its discretion in concluding that the avowals of Contreras's defense counsel supplied no reasonable grounds to order another competency evaluation.  Therefore, the court did not abuse its discretion in denying another competency evaluation request on the first

day of trial.

¶18 Contreras relies on *Drope v. Missouri*, 420 U.S. at 179-80, in asserting the trial court was required to order a competency evaluation *sua sponte* at the sentencing hearing because a note in the presentence investigation report stated Contreras could not be interviewed because he was making "delusional statements." In *Drope*, the U.S. Supreme Court recognized that "evidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial are all relevant in determining whether further inquiry is required." *Id*. (citing *Pate v. Robinson*, 383 U.S. 375, 384-85 (1966)). Here, however, Contreras's demeanor during the presentence interview was not observed by the court, and the prior medical opinions on competence as well as the court's observation of Contreras during trial are factors that could properly weigh against further competency evaluation. Furthermore, the court presided over the trial and was aware Contreras's story about the stabbing was "unbelievable," but noted, "[he] stuck to that story. . . . [H]e's told it enough times he believes it to be true." Therefore, the remark within the presentence report was not sufficient grounds upon which to find error in the court's failure to *sua sponte* order another competency evaluation.

## III. Contreras's Statements Were Voluntary.

¶19 Contreras argues that because he "was clearly actively psychotic at the time of his arrest," the trial court erred in finding his statements regarding methamphetamine use were voluntary and that he knowingly and intelligently waived his rights under *Miranda v. Arizona*, 384 U.S. 436, 467-68 (1966). We review the court's ruling admitting Contreras's statements for an abuse of discretion based upon the evidence presented at the voluntariness hearing, and we view the evidence presented in the light most favorable to upholding the court's ruling. *See State v. Ellison*, 213 Ariz. 116, 126, ¶ 25 (2006) (citations omitted).

¶20 Statements to law enforcement are presumed involuntary and are admissible only upon proof from the State that they were freely and voluntarily made and not the product of coercion. *State v. Boggs*, 218 Ariz. 325, 335, ¶ 44 (2008) (citing *Ellison*, 213 at 126, ¶ 25, and *State v. Arnett*, 119 Ariz. 38, 42 (1978)). "The state meets its burden 'when the officer testifies that the confession was obtained without threat, coercion or promises of immunity or a lesser penalty.'" *Id.* (quoting *State v. Jerousek*, 121 Ariz. 420, 424 (1979)). To find a statement was made involuntarily, there must be evidence of "both coercive police behavior and a causal relation between the coercive behavior and the defendant's overborne will." *Id.* at 336, ¶ 44 (2008) (citing *Colorado v. Connelly*, 479 U.S. 157, 165-66 (1986)).

**¶21** In this case, the police officers to whom Contreras made the statements at issue both testified they did not use any force or threats against Contreras and no promises were made. As soon as the first officer on the scene realized Contreras's involvement in the stabbing, the officer handcuffed Contreras, explained he was being arrested for the stabbing, and read him his *Miranda* rights. Contreras said he understood his rights and agreed to answer questions. Although Contreras asserts his statements could not have been voluntary due to his mental instability, "the critical element . . . is whether police conduct constituted overreaching." *See State v. Poyson*, 198 Ariz. 70, 75, ¶ 10 (2000) (internal quotation omitted). We find no evidence of coercive police activity; no evidence was presented showing Contreras was forced, threatened with force, or made promises in order to elicit the statements at issue. Therefore, the trial court did not abuse its discretion in finding the State met its burden of proving Contreras's statements were voluntarily made.

**IV. The Trial Court Did Not Err in Failing to Give a *Willits* Instruction.**

**¶22** Contreras argues the trial court erred in failing to, *sua sponte,* instruct the jury that it could infer from the State's failure to obtain a blood or urine sample following Contreras's arrest that the results would be unfavorable to the State, pursuant to *State v. Willits*, 96 Ariz. 184 (1964). Contreras argues the absence of this instruction allowed the State to undermine his insanity defense by asserting without physical evidence that he had recently taken methamphetamine. Because Contreras did not ask for a *Willits* instruction, we review the court's decision for fundamental error. *State v. Henderson*, 210 Ariz. 561, 567, ¶ 19 (2005).

**¶23** A *Willits* instruction may be given when police "negligently fail to preserve potentially exculpatory evidence . . . permit[ting] the jury to infer that the evidence would have been exculpatory." *State v. Fulminante*, 193 Ariz. 485, 503, ¶ 62 (1999). A defendant is entitled to a *Willits* instruction upon proving: "(1) the state failed to preserve material and reasonably accessible evidence that could have had a tendency to exonerate the accused, and (2) there was resulting prejudice." *State v. Glissendorf*, 235 Ariz. 147, 150, ¶ 8 (2014) (citing *State v. Speer*, 221 Ariz. 449, 457, ¶ 40 (2009), and *State v. Smith*, 158 Ariz. 222, 227 (1988)).

**¶24** This is not a case where law enforcement officers lost or destroyed evidence; rather, it is a case where law enforcement officers were unsuccessful in collecting evidence which the defendant now desires. Contreras is not entitled to a *Willits* instruction "merely because a more exhaustive investigation could have been made." *See State v. Murray*, 184 Ariz. 9, 33 (1995); *see also State v. Willcoxson*, 156 Ariz. 343, 346 (App. 1987)

(noting "failure to pursue every lead or gather every conceivable bit of physical evidence" does not require a *Willits* instruction). We therefore find no error, fundamental or otherwise.

**CONCLUSION**

¶25          For the foregoing reasons, we affirm Contreras's convictions and sentences.[3]



Ruth A. Willingham · Clerk of the Court
FILED: ama

---

[3]          Although Contreras was convicted for three separate charges arising from his conduct, we find no error. Double jeopardy exists where multiple punishments are imposed for the same offense. *State v. Eagle*, 196 Ariz. 188, 190, ¶ 6 (2000) (citing *Whalen v. United States*, 445 U.S. 684, 688 (1980)). However, "where the same act or transaction constitutes violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact that the other does not." *Blockburger v. United States*, 284 U.S. 299, 304 (1932). Here, Contreras was charged with three distinct offenses that require proof of a fact that the others do not: Attempted first-degree murder under A.R.S. §§ 13-1001 and -1105(A) requires proof the perpetrator attempted to cause the death of another person with premeditation, aggravated assault under A.R.S. § 13-1204(A)(1) requires proof the perpetrator committed assault causing serious physical injury to another, and aggravated assault under A.R.S. § 13-1204(A)(2) requires proof the perpetrator committed assault using a deadly weapon.