NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

STATE OF ARIZONA, *Appellee,*

*v.*

KENNETH WAYNE BIRCHETT, JR., *Appellant.*

Nos. 1 CA-CR 14-0602, 1 CA-CR 15-0442 (Consolidated)
FILED 6-2-2016

---

Appeal from the Superior Court in Yavapai County
No. V1300CR201280017
The Honorable Michael R. Bluff, Judge

**AFFIRMED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Eliza C. Ybarra
*Counsel for Appellee*

Yavapai County Public Defender's Office, Prescott
By John Napper
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Judge Maurice Portley delivered the decision of the Court, in which Presiding Judge Samuel A. Thumma and Judge John C. Gemmill joined.

---

**P O R T L E Y**, Judge:

¶1        Kenneth Wayne Birchett, Jr., appeals his convictions and sentences for burglary, possession of burglary tools, two counts of kidnapping, two counts of attempted armed robbery, and three counts of aggravated assault.  Because Birchett has shown no error, we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

¶2        During an attempted armed robbery in July 2011, a married couple was assaulted in their Village of Oak Creek home.  Although the assailant was wearing a mask, the male victim pulled the mask down, saw the assailant's face, and was able to describe that person to a police artist, who prepared a composite sketch of the suspect's face.

¶3        After discovering a fingerprint on a nearby bucket, which matched Birchett's fingerprint, the Yavapai County Sheriff's Office began investigating Birchett.  The assigned detective believed Birchett's driver's license picture was "very similar" to the composite sketch.

¶4        Birchett's cell phone records placed him in the Village of Oak Creek the night before the attempted robbery, and in Camp Verde about an hour and a half after the attempted robbery.  Further investigation revealed that Birchett frequented the casino where the male victim was a high-stakes gambler; that Birchett was in financial distress at the time of the home invasion; and that Birchett had moved to North Dakota a month or two after the attempted robbery.

¶5        Birchett was arrested, and search warrants were obtained for buccal swabs and to search his North Dakota trailer.  During a search of his trailer, deputies seized a Bulldog Pug Charter Arms .44 special revolver.  Birchett was charged, and went to trial.

¶6        In addition to testimony about the investigation by the sheriff's office, the jury heard testimony from the Department of Public Safety ("DPS") supervising criminalist, who testified that Birchett's DNA

profile matched the DNA found in the interior of a tip of a finger from a black rubber glove, which was found inside of the victims' house. A DPS firearms and tool-mark examiner testified that the handgun seized from Birchett's trailer was one of three types of firearms that could have fired a bullet fragment found on the victims' kitchen counter, and the only one of those types of firearms that could have produced the burn marks on the male victim's t-shirt.

¶7            The jury found Birchett guilty as charged, found eight of the nine offenses were dangerous, and found multiple aggravating factors. The trial court sentenced him to aggravated, concurrent and consecutive prison terms totaling 30 years. Birchett filed a timely notice of appeal from the convictions and sentences.[1]   We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1), 13-4031, and -4033(A).

## DISCUSSION

### A.    *Willits* **Instruction**

¶8            Birchett argues the trial court abused its discretion by denying his request for an instruction under *State v. Willits*, 96 Ariz. 184, 393 P.2d 274 (1964).   He argues lost evidence would have had a tendency to exonerate him.

¶9            At the end of the case, Birchett asked for a *Willits* instruction. He wanted the instruction because the police did not keep the surveillance videos from nearby businesses along potential escape routes. Birchett argues the videos had a tendency to exonerate him because they would not show him, but would show another person fitting the suspect's description. He also asked for a *Willits* instruction on a missing silent-witness report, arguing the missing report would have shown that the witness overheard another person talking about committing the offense.

¶10           The trial court denied the requests, explaining that it had reviewed the testimony about the videos and did not believe that the videos would have had a tendency to exonerate Birchett. The court also found that there was no prejudice from the loss or destruction of either the videos or the silent-witness report.

---

[1] The court then held a restitution hearing and issued its order. Birchett filed a timely delayed notice of appeal from that order, and the cases were consolidated for appeal. Other than challenging his convictions, Birchett does not otherwise challenge the restitution ordered.

¶11        A *Willits* instruction allows the jury to draw an inference that the lost or destroyed evidence would have been unfavorable to the State. *State v. Fulminante*, 193 Ariz. 485, 503, ¶ 62, 975 P.2d 75, 93 (1999). A defendant is entitled to a *Willits* instruction upon proving that "(1) the state failed to preserve material and reasonably accessible evidence that could have had a tendency to exonerate the accused, and (2) there was resulting prejudice." *State v. Glissendorf*, 235 Ariz. 147, 150, ¶ 8, 329 P.3d 1049, 1052 (2014) (citations omitted). To prove that evidence has a tendency to exonerate, the defendant cannot "simply speculate about how the evidence might have been helpful." *Id.* at ¶ 9. Rather, the defendant must show "a real likelihood that the evidence would have had evidentiary value." *Id.* We review a court's refusal to give the instruction for abuse of discretion. *Fulminante*, 193 Ariz. at 503, ¶ 62, 975 P.2d at 93 (citation omitted).

¶12        Sergeant Alex Jaramillo testified that he collected surveillance videos from three nearby businesses capturing activity for 24 to 48 hours around the time of the home invasion. He testified that he mistakenly failed to put the videos into evidence before he left the unit conducting the investigation. He testified, however, that a deputy assisting in the investigation had reviewed all of the videos for a man matching the suspect's description, and found none, other than a man wearing a black backpack, who appeared in a video retrieved from a Shell gas station. Another deputy contacted the man depicted in the Shell video, but eliminated him as a suspect because his skin was lighter and he was thinner than the description of the suspect.

¶13        The deputy printed a still photograph of the man with the backpack, and six still photographs from the Shell gas station video were disclosed to the defense before trial, but not introduced at trial. The trial court, after reviewing the record, could reasonably conclude that the videos — which showed only portions of some possible escape routes — would not have had any tendency to exonerate Birchett, and, as a result, did not abuse its discretion in denying a *Willits* instruction. *See State v. Bolton*, 182 Ariz. 290, 309, 896 P.2d 830, 849 (1995) (holding that denial of *Willits* instruction was appropriate for destruction of taxicab which had been extensively photographed and tested, with results provided to defense counsel); *State v. Torres*, 162 Ariz. 70, 76, 781 P.2d 47, 53 (App. 1989) (holding that proof of the absence of fingerprints on heroin packet would not have materially aided defense, and accordingly the court did not abuse its discretion in denying *Willits* instruction).

¶14 Sergeant Jaramillo also testified that a silent-witness report missing from the record prompted officers to interview J.M. The missing report was similar to a later silent-witness report in the record, which indicated the witness reported that he heard people discussing J.M.'s involvement in the crime. Law enforcement eliminated J.M., the person named in the two silent-witness reports, as a suspect after further investigation, including a photo line-up and DNA testing. And before trial, the defense informed the court that he was not interested in obtaining the names of the silent witnesses, but was interested only in the information provided by those witnesses. Because the substantial equivalent of the missing report, the later silent-witness report, was presented at trial, the court did not abuse its discretion by denying a *Willits* instruction. *See State v. Hansen*, 156 Ariz. 291, 294-95, 751 P.2d 951, 954-55 (1988) (holding that court did not abuse its discretion in denying *Willits* instruction when similar photographs to those missing were presented at trial); *see also State v. Willcoxson*, 156 Ariz. 343, 346, 751 P.2d 1385, 1388 (App. 1987) (stating "failure to pursue every lead or gather every conceivable bit of physical evidence" does not require *Willits* instruction).

## B.    Other-Act Evidence

¶15 Birchett also argues that the trial court abused its discretion in admitting evidence of a civil lawsuit against him for failing to repay a loan under Arizona Rule of Evidence ("Rule") 404(b). Although the lawsuit was used as evidence of motive for the attempted armed robbery, he argues admission of the evidence was error because the civil lawsuit was filed and served after the date of the attempted robbery, and the settlement and default occurred even later.

¶16 Other-act evidence is admissible under Rule 404(b) if the State proved that the defendant committed the other act; it is offered for a purpose other than to show propensity to commit the charged act; its relevance is not substantially outweighed by the potential for unfair prejudice under Rule 403; and the court provides a limiting instruction if requested under Rule 105. Ariz. R. Evid. 404(b); *State v. Mott*, 187 Ariz. 536, 545, 931 P.2d 1046, 1054 (1997). We review the admission of Rule 404(b) other act evidence for an abuse of discretion. *State v. Forde*, 233 Ariz. 543, 558-59, ¶ 42, 315 P.3d 1200, 1215-16 (2014) (citation omitted).

¶17 The trial court granted the State's pretrial motion to admit evidence about the lawsuit, finding that the evidence was offered to show motive, a proper purpose under Rule 404(b); it was relevant; its probative value was high; and it had little or no danger of unfair prejudice. As a result, at trial, the plaintiff in the civil lawsuit testified that she had loaned

Birchett $8,000 to purchase a motor home in April 2011, he had failed to make any payments in June, and failed to comply with her demand for payment, which resulted in a lawsuit being filed against him on August 1, 2011.

¶18        The plaintiff also testified that in Birchett's answer, which was filed on August 19, 2011, he explained that he had "panicked with [his] finances during the month of June and July;" gambled what was left from his pay check in a failed attempt to get money to repay the loan; and was taking a job in North Dakota that should allow him to repay it in full by the end of October.   The plaintiff and Birchett reached an agreement in November that Birchett would repay the loan at a rate of $2,075 a month for four months, beginning in December.  She testified without objection that she received one more payment from him.  And the court instructed the jury that evidence of the lawsuit could be used only to establish defendant's motive, and not to show that he committed the charged offense.

¶19        The trial court did not abuse its discretion by admitting the evidence about the lawsuit under Rule 404(b).  The evidence of the lawsuit and Birchett's response was probative of his motive to engage in the charged crimes.  Moreover, and without citing to any authority, Birchett is wrong to suggest that other act evidence must relate to events that pre-date the alleged crimes. *See State v. Terrazas*, 189 Ariz. 580, 588, 944 P.2d 1194, 1202 (1997) (Martone, J., dissenting) (noting that "[t]here is no per se exclusionary rule for 'other act' evidence offered for a proper purpose.") (citation omitted).  And our review of the record shows the State used the evidence solely to demonstrate Birchett's motive for the attempted armed robbery, his debt, and when he was unable to pay it in June and July he panicked, and not for any improper or unfairly prejudicial purpose.  Birchett, in turn, argued that the settlement agreement, and his payment of the first installment of $2,075 in December 2011, showed that he had developed a successful plan to repay his debt by obtaining a high-paying job in North Dakota.  The jury, as a result, had to determine whether the debt leading to the lawsuit demonstrated a motive for his actions.  Consequently, based on the record, the court did not abuse its discretion in admitting this evidence under Rule 404(b).

## CONCLUSION

¶20      For the foregoing reasons, we affirm Birchett's convictions and sentences.



Ruth A. Willingham · Clerk of the Court
FILED: AA