IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

**STATE OF ARIZONA,**
*Appellee,*

*v.*

**ROBERT CHARLES GLISSENDORF,**
*Appellant.*

No. CR-13-0388-PR
Filed July 18, 2014

Appeal from the Superior Court in Pima County
The Honorable Michael O. Miller, Judge
No. CR20112756-001
**REVERSED AND REMANDED**

Opinion of the Court of Appeals, Division Two
233 Ariz. 222, 311 P.3d 244 (App. 2013)
**VACATED**

COUNSEL:

Lori J. Lefferts, Pima County Public Defender, David J. Euchner (argued), Katherine A. Estavillo, Assistant Public Defenders, Tucson, for Robert Charles Glissendorf

Thomas C. Horne, Arizona Attorney General, Robert L. Ellman, Solicitor General, Joseph T. Maziarz (argued), Chief Counsel, Criminal Appeals Section, Phoenix, for State of Arizona

CHIEF JUSTICE BALES authored the opinion of the Court, in which, VICE CHIEF JUSTICE PELANDER, JUSTICE BERCH, JUSTICE BRUTINEL, and JUSTICE TIMMER joined.

CHIEF JUSTICE BALES, opinion of the Court:

¶1          Fifty years ago, this Court held that if the state fails to preserve evidence that is potentially exonerating, the accused might be

entitled to an instruction informing the jury that it may draw an adverse inference from the state's action. *See State v. Willits*, 96 Ariz. 184, 191, 393 P.2d 274, 279 (1964). Today, we reaffirm this principle. Because the trial court erred in refusing to give a *Willits* instruction and the State has not established that the error was harmless, we reverse the convictions and sentences and remand for a new trial.

**I.**

¶2　　　　In 2012, Robert Charles Glissendorf was tried for three counts of child molestation. Count 1 involved his niece, E.G., who testified that when she was between five and seven years old she awoke one night to find Glissendorf touching her vagina. This incident occurred between 1997 and 1999, but E.G. did not report it until 2001. That year, a Tucson detective tape-recorded his interview of E.G. about the incident and summarized the interview in a written report. A Child Protective Services ("CPS") employee was also present and recorded the interview on video. The State initially decided not to prosecute. Six to twelve months later, the Tucson Police Department ("TPD"), consistent with its then-existing policy, destroyed its recording. The CPS recording was also destroyed.

¶3　　　　Counts 2 and 3 involved similar molestations reported in 2010 by I.K., who was then five years old. I.K. testified that, sometime between 2009 and 2010, she and her sister, A.K., were each molested by Glissendorf one night when he slept over at their mother's house. Count 2 was based on the molestation of I.K., and Count 3 concerned the molestation of A.K. Because A.K. was not awake during the incident, I.K.'s testimony provided the evidence for both counts.

¶4　　　　Over Glissendorf's objection, the trial court allowed another witness, C.L., to testify under Evidence Rule 404(c)'s other-act exception about an alleged incident in Nevada in 1976. C.L. testified that, when she was six years old, Glissendorf lured her into an apartment with candy, forced her to lie down on the couch, and touched her vagina. He then gave her two dollars and let her go. Glissendorf was later arrested in Nevada but was never charged for this incident.

¶5　　　　At trial, Glissendorf requested a *Willits* instruction regarding the destruction of the TPD and CPS recordings of the 2001 interview with E.G., arguing that the recordings would have been useful in impeaching her

2012 testimony. The trial court construed Glissendorf's request as seeking the following standard jury instruction:

> If you find that the State has lost, destroyed, or failed to preserve evidence whose contents or quality are important to the issues in this case, then you should weigh the explanation, if any, given for the loss or unavailability of the evidence. If you find that any such explanation is inadequate, then you may draw an inference unfavorable to the State, which in itself may create a reasonable doubt as to the defendant's guilt.

Rev. Ariz. Jury Instr. ("RAJI") Stand. Crim. 10. The court denied the request because the recordings had not been maliciously destroyed and Glissendorf had not shown that they contained exculpatory evidence.

¶6        The jury convicted Glissendorf on Counts 1 and 2 and acquitted him on Count 3; he was sentenced to consecutive prison terms totaling thirty-four years. Glissendorf appealed and raised several issues, including the denial of a *Willits* instruction and the admission of C.L.'s testimony under Rule 404(c). The court of appeals concluded that the trial court erred in refusing to give a *Willits* instruction, but the court reversed only the conviction and sentence on Count 1. *State v. Glissendorf*, 233 Ariz. 222, 233–34 ¶ 32, 311 P.3d 244, 255–56 (App. 2013). As for the admission of C.L.'s testimony, the court of appeals found the trial court had erred in one aspect of its Rule 404(c) analysis; because the court of appeals could not determine whether this error affected the trial court's ultimate ruling, however, it remanded to allow the trial court to clarify this point. *Id.* at 235 ¶¶ 39–40, 311 P.3d 258.

## II.

¶7        We review rulings regarding a *Willits* instruction for abuse of discretion. *See State v. Bolton*, 182 Ariz. 290, 309, 896 P.2d 830, 849 (1995). In *Willits,* this Court held that a defendant is entitled to an adverse-inference instruction when the state loses or destroys evidence that would have been useful to the defense, even if that destruction is innocent:

> We think that the rule permitting an inference is not based only on the notion that the destruction is motivated by

a desire to conceal the truth. Evidence, of course, may be innocently destroyed without a fraudulent intent simply through carelessness or negligence or, as the case might have appeared to the jury here, an unwillingness to make the necessary effort to preserve it. In any event, the State cannot be permitted the advantage of its own conduct in destroying evidence which might have substantiated the defendant's claim regarding the missing evidence. But the damage to the defendant is equally great because the evidence was no longer available at the trial by which the facts with certainty could be determined.

*Willits*, 96 Ariz. at 191, 393 P.2d at 279.

¶8 The Court has repeatedly upheld this approach, eventually fashioning a two-element test: "To be entitled to a *Willits* instruction, a defendant must prove that (1) the state failed to preserve material and reasonably accessible evidence that could have had a tendency to exonerate the accused, and (2) there was resulting prejudice." *State v. Smith*, 158 Ariz. 222, 227, 762 P.2d 509, 514 (1988) (citing *State v. Perez,* 141 Ariz. 459, 464, 687 P.2d 1214, 1219 (1984)); *see also State v. Speer*, 221 Ariz. 449, 457 ¶ 40, 212 P.3d 787, 795 (2009).

¶9 To show that evidence had a "tendency to exonerate," the defendant must do more than simply speculate about how the evidence might have been helpful. *See, e.g.*, *Speer*, 221 Ariz. at 457 ¶ 41, 212 P.3d at 795 (observing that defendant did not show how the evidence would have exonerated him or even mitigated his participation in the crime); *Smith*, 158 Ariz. at 227, 762 P.2d at 514 (holding that speculation as to how the evidence might have been beneficial was not enough); *Perez*, 141 Ariz. at 464, 687 P.2d at 1219 (observing that appellant presented no evidence on how the missing evidence would have helped his defense). In other words, there must be a real likelihood that the evidence would have had evidentiary value. *See, e.g.*, *State v. Murray*, 184 Ariz. 9, 33, 906 P.2d 542, 566 (1995) (noting that "[a] *Willits* instruction is not given merely because a more exhaustive investigation could have been made"); *State v. Watkins*, 126 Ariz. 293, 302, 614 P.2d 835, 844 (1980) (concluding that the evidence had "no evidentiary value"); *State v. Garrison*, 120 Ariz. 255, 259, 585 P.2d 563, 567 (1978) (same).

¶10　　　　The phrase "tendency to exonerate," however, does not mean the evidence must have had the potential to completely absolve the defendant. *See State v. Hunter*, 136 Ariz. 45, 51, 664 P.2d 195, 201 (1983) ("To be entitled to a *Willits* instruction, . . . an accused need not prove that evidence destroyed by the state would have conclusively established a defense."). Rather, as the court of appeals correctly held, a defendant "is entitled to an instruction if he can demonstrate that the lost evidence would have been material and potentially useful to a defense theory supported by the evidence." *Glissendorf*, 233 Ariz. at 229 ¶ 17, 311 P.3d at 251. Indeed, we have previously used the phrase "potentially helpful" interchangeably with "tendency to exonerate." *See, e.g.*, *Murray*, 184 Ariz. at 33, 906 P.2d at 566 (quoting *State v. Lopez*, 163 Ariz. 108, 113, 786 P.2d 959, 964 (1990)) ("A *Willits* instruction is appropriate when the state destroys or loses evidence potentially helpful to the defendant.") (internal quotation marks omitted).

¶11　　　　The "tendency to exonerate" test is not the same as that for a violation of due process. The "failure to preserve potentially useful" evidence is not a denial of due process unless "a criminal defendant can show bad faith on the part of the police." *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988). Thus, the test for a violation of due process depends on the subjective intent of law enforcement, while the test for giving a *Willits* instruction is explicitly intended to cover innocent destruction. *Compare Youngblood*, 488 U.S. at 58, *with Willits*, 96 Ariz. at 191, 393 P.2d at 279.

¶12　　　　Bad faith can be difficult to prove, while the "tendency to exonerate" standard is more easily satisfied. *See Cost v. State*, 10 A.3d 184, 192–94 (Md. 2010); *see also* Norman C. Bay, *Old Blood, Bad Blood, and Youngblood: Due Process, Lost Evidence, and the Limits of Bad Faith*, 86 Wash. U. L. Rev. 241, 288 (2008). This difference in the two standards makes sense in light of the greater consequences that stem from a violation of due process: "when evidence has been destroyed in violation of the Constitution, the court must choose between barring further prosecution or suppressing . . . the State's most probative evidence." *California v. Trombetta*, 467 U.S. 479, 487 (1984). Both of these remedies are more drastic than the mere adverse inference that jurors may be permitted to draw by a *Willits* instruction. Hence, it follows that the bar for issuing a *Willits* instruction is lower than that for establishing a violation of due process. *See State v. Youngblood*, 173 Ariz. 502, 507, 844 P.2d 1152, 1157 (1993) ("[W]here there is no bad faith[,] it is fundamentally unfair to bar the state from our courts. The inference that the evidence may be exculpatory is not strong enough to

dismiss the case. It is enough to let the jury decide whether to draw such an inference.").

¶13 Nonetheless, the State urges us to overrule *Willits*, essentially arguing that consequences for the loss or destruction of evidence should only apply if it were done in bad faith. We decline the State's invitation. A consequence for even innocent loss or destruction is necessary both to deter such action and to ensure that defendants do not bear the burden of the state's actions. *See Cost*, 10 A.3d at 197 ("For the judicial system to function fairly, one party in a case cannot be permitted to gain an unfair advantage through the destruction of evidence."). Moreover, the *Willits* instruction takes into account the state's explanation of the destruction by permitting jurors to draw an adverse inference only if they "find that any such explanation is inadequate." RAJI Stand. Crim. 10.

¶14 As support for its argument that *Willits* should be overturned, the State contends that the instruction lacks a statutory or constitutional basis. The State correctly observes that this Court has never held that Arizona's due process clause requires the issuance of *Willits* instructions. Instead, the Court has held that the same bad-faith test applies to identify violations of either the Arizona due process clause or the federal due process clause. *See Speer*, 221 Ariz. at 457 ¶ 36, 212 P.3d at 795; *Youngblood*, 173 Ariz. at 507–08, 844 P.2d at 1157–08.

¶15 Many other state courts, however, have held that their state constitutions or evidentiary rules require measures similar to a *Willits* instruction when the state's failure to preserve evidence does not involve bad faith. *See Cost*, 10 A.3d at 193–95 (describing several states' approaches). Such holdings recognize that when potentially exonerating evidence is lost or destroyed, an adverse-inference instruction may be appropriate because the accused is presumed innocent and the state bears the burden of proving guilt beyond a reasonable doubt. While jurors generally are instructed to determine the facts from the admitted evidence, a *Willits* instruction permits them to draw an adverse inference from the loss or destruction of evidence by the state.

¶16 Even if *Willits* is characterized as a court-adopted rule of evidence, *see id*. at 194, we believe that it properly balances the state's duty to prove guilt with the defendant's presumed innocence. We therefore decline to abrogate a rule that has been part of Arizona law for fifty years

and has been applied in dozens of cases by this Court and the court of appeals.

¶17        Alternatively, the State argues that a *Willits* instruction is appropriate only if the exculpatory value was apparent when the evidence was destroyed. In support of this argument, the State cites several court of appeals' opinions. *See State v. Davis*, 205 Ariz. 174, 180 ¶ 37, 68 P.3d 127, 133 (App. 2002); *State v. Tinajero*, 188 Ariz. 350, 355, 935 P.2d 928, 933 (App. 1997); *State v. Walters*, 155 Ariz. 548, 551, 748 P.2d 777, 780 (App. 1987). These cases do not persuasively support the State's position, however, as they largely cite each other or the United States Supreme Court's decision in *Trombetta*, which involved a federal due process claim. In assessing materiality in that context, *Trombetta* stated "evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." 467 U.S. at 489.

¶18        The *Trombetta* standard, grounded in the due process clause, is inapposite for assessing the appropriateness of a *Willits* instruction, which, as discussed, does not turn on the subjective intent of the state's agents. Thus, to the extent that Arizona courts have implied an apparent exculpatory value requirement for issuing *Willits* instructions, the courts have incorrectly conflated the due process analysis with that for *Willits* instructions. We therefore reaffirm that a defendant is entitled to a *Willits* instruction when "(1) the state failed to preserve material and reasonably accessible evidence that could have had a tendency to exonerate the accused, and (2) there was resulting prejudice." *Smith*, 158 Ariz. at 227, 762 P.2d at 514.

¶19        In this case, Glissendorf easily met the "tendency to exonerate" standard. He noted several differences between E.G.'s story as recounted in the 2001 police report and her trial testimony more than a decade later, including the number of times she claimed Glissendorf touched her. The recordings thus had the potential to assist Glissendorf in impeaching E.G. Without this tool for impeaching the State's only witness to the incident, Glissendorf was prejudiced. The prejudice was compounded by E.G.'s suggestion on cross-examination that the written police report was both inaccurate and incomplete. As the court of appeals observed, "The loss of the [recordings] thus created a two-fold harm, depriving Glissendorf of objective impeachment evidence and

undermining the exculpatory impact of the evidence of the 2001 interview that survived." *Glissendorf*, 233 Ariz. at 230–31 ¶ 23, 311 P.3d at 252–53.

¶20 Although the court of appeals correctly held that the trial court should have given a *Willits* instruction, the court erred in reversing only the conviction on Count 1. Because the alleged acts were similar, the State chose to try in one case the counts involving separate victims, *see* Ariz. R. Crim. P. 13.3(a), and thereby to prove each act based in part on the evidence of the other acts. Although character evidence is generally not admissible to prove action in conformity therewith, Ariz. R. Evid. 404(a), our rules make a narrow exception for sexual misconduct cases in which the state can show that the defendant had an "aberrant sexual propensity to commit the offense," Ariz. R. Evid. 404(c). Thus, in 404(c) cases, separate acts may be used to corroborate each other.

¶21 Throughout the trial, the State repeatedly encouraged the jury to infer that the similarity of the acts supported convictions on all counts. For example, during closing arguments, the prosecutor stated that the "evidence as a whole shows . . . a pattern over and over again of the same man, the same targets, the same acts again and again." Repeating this theme, the prosecutor said "[t]he common thread is the defendant doing the same thing, picking out the same little girls over and over again," and "those facts are the same every single time. The same man, the same age they were at, the same acts over and over again."

¶22 The court of appeals, however, held that the denial of a *Willits* instruction was harmless as to Count 2 because Glissendorf did not argue that the error had affected that count. *Glissendorf*, 233 Ariz. at 233–34 ¶ 32, 311 P.3d at 255–56. This reasoning is flawed in both its characterization of Glissendorf's arguments and its application of the harmless error standard. Although Glissendorf did not make separate arguments as to each count, he did not limit his argument to Count 1. Instead, he argued generally that the trial court's error in failing to give a *Willits* instruction should result in the reversal of both convictions.

¶23 Once Glissendorf had shown error, the burden shifted to the State to prove that the error was harmless beyond a reasonable doubt. *State v. Henderson*, 210 Ariz. 561, 567 ¶ 18, 115 P.3d 601, 607 (2005). The State did not meet this burden. In its answering brief before the court of appeals, the State did not even mention harmlessness. In opposing the petition for

review in this Court, the State merely observed that the two victims were "unrelated." And the State's argument on the issue in its supplemental brief focused on Glissendorf's alleged failure to show error rather than explaining how the error was harmless.

¶24 The State's reticence perhaps reflects that there is no convincing argument that the error did not affect both counts. *See id.* ("Harmless error review places the burden on the state to prove beyond a reasonable doubt that the error did not contribute to or affect the verdict or sentence."). The State's case rested entirely on testimony, and Rule 404(c) allowed the State to urge the jury to consider the evidence for one count as supporting the other counts. Denying a *Willits* instruction thus affected both Counts 1 and 2, because uncertainty about Count 1 might have undermined the State's arguments that it proved Count 2 beyond a reasonable doubt. Because Glissendorf showed error with regard to both counts and the State failed to show harmlessness, we must reverse the convictions and sentences for both counts.

¶25 Although we also granted review to consider whether the court of appeals erred by remanding for clarification of the trial court's Rule 404(c) analysis, this issue is now moot, and we decline to address it. On remand, the trial court shall reconsider the admission of the Rule 404(c) evidence, if it is again offered.

## III.

¶26 We reverse the convictions and sentences, vacate the opinion of the court of appeals, and remand this case to the trial court for a new trial.