NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

STATE OF ARIZONA,
*Appellee*,

*v.*

WILLIE ISAIAH JOHNSON,
*Appellant.*

No. 1 CA-CR 15-0448
FILED 8-11-2016

Appeal from the Superior Court in Maricopa County
No. CR 2014-123358-001
The Honorable Daniel J. Kiley, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Jillian Francis
*Counsel for Appellee*

The Hopkins Law Office, PC, Tucson
By Cedric Martin Hopkins
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Patricia A. Orozco delivered the decision of the Court, in which Presiding Judge Patricia K. Norris and Judge Peter B. Swann joined.

---

**O R O Z C O**, Judge:

¶1 Willie Isaiah Johnson appeals his convictions and sentences for two counts of threatening or intimidating, one count of aggravated assault, one count of resisting arrest, and one count of assisting a criminal street gang. For the reasons that follow, we affirm.

## FACTS[1] AND PROCEDURAL HISTORY

¶2 In May 2014, a woman working at a mall kiosk contacted security to report "an issue that she was having" with a patron. Based on the description she provided, the security dispatcher located Johnson on a video monitor, and R.R., a mall security officer, moved to Johnson's vicinity to monitor him. R.R. observed that Johnson was loud and appeared to be arguing with another kiosk worker. When Johnson returned to the women and children he came to the mall with, he asked R.R. "[W]hy are you watching me[?]" and "Is there a problem?" Johnson then began filming R.R. with his cell phone.

¶3 At that point, R.R. asked Johnson to leave, and Johnson and his companions walked away. While walking away, Johnson said, "Wait till I come back." R.R. asked dispatch to keep a surveillance camera on Johnson.

¶4 Soon thereafter, Officer J.G., an off-duty police officer working as mall security, walked toward Johnson. Officer J.G. heard Johnson threaten to kill R.R. and saw Johnson make gang signs with his hands. Concerned for R.R.'s safety, Officer J.G. attempted to grab Johnson's arms from behind, but Johnson spun around with a fist. Officer J.G. responded with an "impact push" to deflect a possible punch, and propelled Johnson backward into a storefront glass window.

---

[1] We view the facts in the light most favorable to sustaining the verdicts. *State v. Payne*, 233 Ariz. 484, 509, ¶ 93 (2013).

¶5         Officer J.G. and Johnson then fell to the ground and Officer J.G. ordered Johnson to place his hands behind his back, which he refused. Moments later, Officer M.W., another off-duty police officer employed as mall security, assisted Officer J.G. in taking Johnson into custody.   As Officer J.G. attempted to control Johnson's right arm, Johnson "spr[a]ng up" and tried to punch Officer M.W. in the head.  Officer J.G. tased Johnson, handcuffed him, and escorted him to the mall security office.   Johnson continued to threaten the officers, stating, "Now, I know why people kill cops.  Y'all are going to be dead.  I'll be back."

¶6         The State charged Johnson with four counts of threatening or intimidating (Count 1 – victim R.R.; Count 3 – victim Officer J.G.; Count 5 – victim Officer M.W.; Count 8 – victim Officer S.W.), two counts of aggravated assault (Count 2 – victim Officer J.G.; Count 4 – victim Officer M.W.), one count of resisting arrest (Count 6), and one count of assisting a criminal street gang (Count 7).  The State also alleged historical prior felony convictions and aggravating circumstances.

¶7         Officer S.W., who arrived at the mall and went to the mall's security office after other officers had taken Johnson there, viewed a mall surveillance video and requested a copy of it.  Security personnel could not immediately copy the video, but Officer S.W. noted in his police report that a copy of the surveillance video was impounded.  When a detective later requested the surveillance video, Officer S.W. learned that mall security had never provided police with a copy.  Police then discovered that mall security had recorded over the tape.

¶8         Upon learning police had never impounded the surveillance video and it had been destroyed, Johnson moved to dismiss all charges, arguing police acted in bad faith and caused him prejudice.  The court denied the motion, finding the State's failure to preserve the video was the result of "sloppy police work," not bad faith.  The court also noted that defense counsel could only speculate that the video would be exculpatory and there was no evidence of actual prejudice.

¶9         Johnson then moved in limine to preclude Officer S.W. or any other State witness from testifying regarding the contents of the video.  The court deferred ruling on the motion and, at trial, the prosecutor informed the court that she was "not planning on eliciting" any testimony regarding the contents of the video.  Based on this representation, the court found, and defense counsel agreed, that the motion was moot.

¶10 Johnson also requested a *Willits* instruction, claiming the surveillance video would have provided exculpatory evidence. The court denied the request, concluding the State never possessed the video and was not duty-bound to seek exculpatory evidence on Johnson's behalf. The court further found that any prejudice caused by the loss of the video was ameliorated by the multiple eyewitnesses available to testify.

¶11 At trial, Johnson called his girlfriend, Domonique, to testify. She testified that she accompanied Johnson to the mall with her sister and their children. She saw a security guard, R.R., "staring [Johnson] down" and asked R.R. whether "there [was] a problem." R.R. responded, "If you're not doing anything, don't worry about it." Uncomfortable with R.R.'s response, Domonique decided to leave the mall. R.R. followed the group as they were getting ready to leave and Johnson began filming R.R. with his cell phone. Without warning, a police officer then "ran up" on them, grabbed Johnson's arm, and pushed Johnson into a window. Domonique testified that Johnson neither threatened any of the officers nor "threw" any type of gang signs.

¶12 Domonique's sister, Davicka, also testified for Johnson. Davicka testified that as they were leaving the mall, an officer ran up behind Johnson, grabbed Johnson's right arm behind his back, and threw Johnson into a glass window. Davicka further testified that Johnson was facing away when the officer grabbed him, that Johnson did not turn around before the officer got to him, and that Johnson "didn't do anything."

¶13 After Davicka's testimony, the State indicated that it intended to call Officer S.W. to testify as to what he observed on the surveillance video to rebut the testimony of Johnson's two witnesses. Officer S.W. had written down "step by step" the interaction he observed between Johnson and Officer J.G. in his report, a copy of which was given to defense counsel before trial.

¶14 Over Johnson's objection, the court found Officer S.W.'s rebuttal testimony regarding the surveillance video was admissible, but reversed its earlier ruling denying a *Willits* instruction to remedy any potential prejudice. On rebuttal, Officer S.W. testified that the surveillance video showed that Officer J.G. attempted to grab Johnson's arm, and Johnson swung around and assumed "a fighting stance." That is, Officer J.G. did not perform the "impact push" until after Johnson had turned and "squared up" to the officer in an aggressive manner.

¶15        The jury found Johnson guilty of two counts of threatening and intimidating (Counts 1 and 3), one count of aggravated assault (Count 4), one count of resisting arrest (Count 6), and one count of assisting a criminal street gang (Count 7).  Johnson timely appealed.  We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, and Arizona Revised Statutes (A.R.S.) sections 12-120.21.A.1, 13-4031, and 4033.A.1 (West 2016).[2]

## DISCUSSION

¶16        Johnson contends the trial court should not have permitted Officer S.W. to testify regarding the contents of the surveillance video because he could not view the video before it was destroyed, even though the court gave a *Willits* instruction.  He further asserts the admission of this testimony infringed on his constitutional right to confront witnesses.  We generally review an evidentiary ruling for an abuse of discretion.  *State v. Ellison*, 213 Ariz. 116, 129, ¶ 42 (2006).  "Evidentiary rulings that implicate the Confrontation Clause, however, are reviewed de novo."  *Id.*

¶17        Relying primarily on *State v. Leslie*, 147 Ariz. 38 (1985), Johnson contends the testimony by Officer S.W. regarding the contents of the surveillance video was inadmissible because he was never able to view it and therefore could not engage in "meaningful rebuttal."

¶18        In this case, Johnson asked for and received a *Willits* instruction at trial.  A *Willits* adverse-inference instruction "adequately protects a defendant's due process rights" when the "state has destroyed or failed to preserve evidence unless the defendant is prejudiced or the state acted in bad faith."  *State v. Serna*, 163 Ariz. 260, 264 (1990); *see also State v. Glissendorf*, 235 Ariz. 147, 150-51, ¶ 11 (2014).

¶19        Johnson does not argue that the *Willits* instruction was error.  Rather, because he did not have a chance to review the video, he argues he was prejudiced because he could not prepare a meaningful rebuttal.  Johnson further argues that he was prejudiced by Officer S.W.'s rebuttal testimony regarding the video because the testimony contradicted his version of the events.  What constitutes proper rebuttal is within the trial court's discretion, and we will not reverse absent an abuse of discretion.  *State v. Young*, 116 Ariz. 385, 387 (1977).  Officer S.W. viewed the surveillance video and summarized its contents in his police report, which

---

2        We cite the current version of applicable statutes when no revisions material to this decision have since occurred.

defense counsel received before trial. Therefore, Johnson knew what Officer S.W. was going to testify about and had an opportunity to cross examine him regarding the contents of the video. Accordingly, Johnson did not suffer prejudice, and the court did not abuse its discretion. *See Young*, 116 Ariz. at 387 ("The trial court's determination will not be disturbed unless manifest abuse has prejudiced the complaining party.") (quoting *Jansen v. Lichwa*, 13 Ariz. App. 168, 171 (1970)). Moreover, we will not presume a denial of due process from the nonproduction of evidence alone. *See State ex rel. Hyder v. Hughes*, 119 Ariz. 261, 263 (1978).

¶20      Furthermore, Johnson's claim that his confrontation rights were violated because he was unable to meaningfully cross-examine Officer S.W. is equally unavailing. "The Confrontation Clause bars admission of out of court testimonial evidence unless the defense has had an opportunity to cross-examine the declarant." *State v. Parker*, 231 Ariz. 391, 402, ¶ 38 (2013) (citing *Crawford v. Washington*, 541 U.S. 36, 38 (2004)). "There is no violation of the right to confrontation when a person who analyzes evidence which is later lost is available for full cross-examination[.] " *State v. Cruz*, 123 Ariz. 497, 500 (App. 1979).

¶21      In this case, defense counsel had the opportunity to fully cross-examine Officer S.W. regarding the surveillance video. Accordingly, there was no Confrontation Clause violation.

## CONCLUSION

¶22      Johnson's convictions and sentences are affirmed.



Ruth A. Willingham · Clerk of the Court
FILED: AA