NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

LOGAN RONEY BYERS, *Appellant.*

No. 1 CA-CR 18-0744
FILED 9-24-2019

Appeal from the Superior Court in Yavapai County
No. V1300CR201780097
The Honorable Jeffrey G. Paupore, Judge *Pro Tempore* (Retired)

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By William Scott Simon
*Counsel for Appellee*

M. Alex Harris P.C., Chino Valley
By M. Alex Harris
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Presiding Judge James B. Morse Jr. delivered the decision of the Court, in which Judge Samuel A. Thumma and Judge David D. Weinzweig joined.

---

**M O R S E**, Judge:

¶1          Logan Roney Byers appeals his conviction and sentence for one count of sexual assault. Byers argues that the trial court erred by precluding evidence and denying his request for a *Willits*[1] instruction. For the following reasons, we affirm.

## BACKGROUND[2]

¶2          Late in the evening on December 25, 2015, Byers sexually assaulted fifteen-year-old M.H. in her bedroom. Byers was M.H.'s uncle through marriage and they both lived at M.H.'s grandmother's home. The next day, after showering and changing clothes, M.H. told her grandmother about the assault and was taken to the hospital. By phone, Byers asked that M.H. not be taken to the hospital because it would "ruin his life." Despite Byers' request, M.H. was taken in for medical examination, where a nurse examined her and noted redness on her vagina. Police also searched the home, collecting M.H.'s bedding and clothes from the night of the assault. While no semen was found on M.H. or her belongings, Byers' DNA was found on the outside of M.H.'s vagina.

¶3          On January 7, 2016, law enforcement conducted a recorded confrontation call, with M.H. calling Byers. When M.H. asked Byers whether he had worn a condom he responded by saying "I didn't do anything [and] even if I did, it doesn't matter, I'm completely […] uncapable." He continued, saying "I didn't do anything but like I said whether or not I did or not you'd have nothing to worry about." Pressed further, he promised M.H. that it was impossible for her to get pregnant because he had "been tested" and knew for a fact that he was sterile. Byers

---

[1]          *State v. Willits*, 96 Ariz. 184 (1964).

[2]          We view the facts in the light most favorable to sustaining the verdict. *State v. Payne*, 233 Ariz. 484, 509, ¶ 93 (2013).

told M.H. that he couldn't "afford to go to jail" and continually asked if anyone from law enforcement was listening in on the call. He emphasized that if he was imprisoned it would create hardship for M.H.'s aunt and grandmother because he was the primary breadwinner for the household. Following the confrontation call, Byers sent text messages in which he continued denying any wrongdoing but repeated that he couldn't "have kids anyway."

¶4 The State charged Byers with one count of sexual assault, a class 2 felony. A jury found Byers guilty and he was sentenced to a slightly mitigated term of six years in prison. He was also ordered to register as a sex offender for life. Byers timely appealed, and we have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1), 13-4031, and -4033(A)(1).

## DISCUSSION[3]

### I.      Preclusion of Evidence

¶5 "The admission of evidence is within the trial court's discretion and will not be disturbed absent an abuse of discretion." *State v. Davolt*, 207 Ariz. 191, 208, ¶ 60 (2004). "When an issue is raised but erroneously ruled on by the trial court, this court reviews for harmless error." *State v. Bible*, 175 Ariz. 549, 588 (1993). Error is harmless if the State demonstrates "beyond a reasonable doubt that the error did not contribute to or affect the verdict," *State v. Henderson*, 210 Ariz. 561, 567, ¶ 18 (2005), and when excluded evidence is merely cumulative to admitted evidence, *State v. Gallegos*, 178 Ariz. 1, 13 (1994).

### a.   Motions in Limine

¶6 Before trial, Byers filed a motion in limine to admit (1) M.H.'s prior sexual conduct, including testimony that her boyfriend digitally penetrated her; (2) M.H.'s statement to her parents that Byers confessed to sexually abusing his step-daughter to her; and (3) Byers' discipline of M.H. a few days before the incident, when he refused to let her boyfriend spend the night. The superior court denied Byers' motion, stating that (1) Byers could not question M.H. about her sexual history; (2) Byers was limited to

---

[3]    The State argues that Byers waived and abandoned his claims on appeal due to his failure to give any argument in his briefs. We agree that Byers' opening brief has failed to develop his arguments. *See* Ariz. R. Crim. P. 31.10(a)(7). However, in our discretion, we address the merits of Byers' arguments.

questioning M.H. and a detective about M.H.'s statement; and (3) Byers was precluded from eliciting testimony about why M.H. was disciplined by Byers a few days before the incident. Byers filed another motion in limine, again seeking to admit evidence about M.H.'s prior sexual history with her boyfriend, but it was denied. During trial, Byers attempted to cross-examine M.H.'s mother about M.H.'s statements that Byers also molested his step-daughter, but the court precluded the testimony as inadmissible hearsay.

¶7        Byers argues that it was error for the trial court to preclude this evidence, but any error was harmless. Although Byers asserts that the evidence was precluded, the contested evidence was presented to the jury. Notwithstanding the court's orders, Byers' trial attorney elicited testimony on all of these subjects during trial, albeit through different witnesses than originally suggested by Byers. While not permitted to question M.H. about her prior sexual history, Byers' counsel cross-examined a detective about M.H.'s prior sexual history with her boyfriend, including the fact that she bled when he digitally penetrated her. Byers conceded that questioning M.H.'s mother about M.H.'s statement regarding the step-daughter molestation allegation was hearsay but his counsel later questioned M.H.'s step-father about the same statement. Byers also cross-examined M.H. and Byers' ex-wife about why M.H. was disciplined a few days before the incident.

¶8        Because Byers was able to present the challenged evidence to the jury, any error in the trial court's pretrial rulings was harmless. *Gallegos*, 178 Ariz. at 13. Moreover, even if the trial court erred in limiting the questioning of certain witnesses, the evidence against Byers was overwhelming, *supra* ¶ 2, and any error was harmless beyond a reasonable doubt. *Henderson*, 210 Ariz. at 567, ¶ 18.

### b. Prior Inconsistent Statement

¶9        Byers next contends that the trial court erred when it precluded admission of emails between the prosecutor and the criminalist as prior inconsistent statements. A witness' prior statement is not hearsay if the witness is subject to cross-examination and the earlier statement is inconsistent with the statement offered at trial. Ariz. R. Evid. 801(d)(1)(A); *see State v. Hernandez*, 232 Ariz. 313, 322, ¶ 41 (2013) ("As a preliminary matter, however, the court must be persuaded that the statements are indeed inconsistent.") (citation omitted); *State v. Navallez*, 131 Ariz. 172, 174 (App. 1981) (affirming "the long established rule that in order for a prior

statement to be admitted for impeachment it must directly, substantially, and materially contradict testimony in issue.").

¶10        During redirect, the State's criminalist rejected the defense's theory—that Byers' DNA was transferred to M.H.'s vagina by a shared towel—as inconsistent with the amount of Byers' DNA found on M.H.'s vagina twelve hours after her shower. Byers objected to the testimony as inconsistent with the criminalist's prior statements, so the trial court permitted Byers to cross-examine the witness a second time. When confronted with her admission during a defense interview that Byers' DNA could have been found on the victim due to the secondary transfer of DNA through the towel, the criminalist agreed it was possible.

¶11        The next day, Byers filed a motion, arguing that emails between the prosecutor and the criminalist should be admitted as prior inconsistent statements.[4]  During oral argument, Byers argued for admission of the criminalist's prior statement that "[a]ll the defense has to ask me is could the DNA have gotten [on M.H.'s underwear] from the hamper and I would say yes" as a prior inconsistent statement. The State argued that the statements were not inconsistent because one concerned the possibility of secondary transfer of DNA within a laundry hamper; the other through a towel. The trial court precluded the admission of the exhibits as inadmissible hearsay.

¶12        On appeal, Byers argues that the criminalist's trial testimony was inconsistent with her prior statement that Byers' DNA was found on the victim through secondary transfer of DNA. We disagree. As a threshold matter, Byers failed to include the emails in the record on appeal. "When the record is not complete, we must assume that any evidence not available on appeal supports the trial court's actions." *State v. Lavers*, 168 Ariz. 376, 399 (1991). Even so, the criminalist's trial testimony followed her previous statement because she acknowledged that the secondary transfer of DNA under defense's towel theory "is possible." The alleged new opinion offered during redirect concerned a more specific question, different from Byers' hypothetical. Thus, we cannot say that the trial court abused its discretion by precluding the criminalist's prior statement.

---

[4]        Byers also argued at trial that the emails constituted an admission by a party opponent, but he does not raise that issue on appeal.

**¶13**       Even assuming there was error, it was harmless.  Byers cross-examined the criminalist twice about her opinions, obtaining consistent concessions both times.  He also presented his own DNA expert to rebut the criminalist's opinion that the DNA evidence was more consistent with the victim's story.  While Byers' DNA expert disagreed with the criminalist's opinion, even his own expert could not say how likely the towel transfer theory was, qualifying her opinion on it as "possible."  For these reasons, any error in excluding the email messages as prior inconsistent statements was harmless.

**II.**             *Willits* **Instruction**

**¶14**       Last, Byers argues that the trial court erred by denying his request for a *Willits* instruction.  A defendant is entitled to a *Willits* instruction when: "(1) the state failed to preserve material and reasonably accessible evidence that could have had a tendency to exonerate the accused, and (2) there was resulting prejudice." *State v. Glissendorf*, 235 Ariz. 147, 152, ¶ 18 (2014) (quoting *State v. Smith*, 158 Ariz. 222, 227 (1988)).  A trial court's ruling on a *Willits* instruction is reviewed for an abuse of discretion. *Glissendorf*, 235 Ariz. at 150, ¶ 7.

**¶15**       At trial, Byers argued for a *Willits* instruction due to the police's failure to preserve his belt, clothes, bedding, towels from the house; to search for a condom; and to check M.H.'s bedroom doorknob for Byers' fingerprints.  The trial court denied the request.  The court reasoned that there would be no exculpatory value to collecting Byers' bedding since one would expect to find his DNA on it and there had been testimony that M.H. spent time in his bedroom before the assault.  As to the condom, the court credited the testimony from Byers' ex-wife who stated he never wore one. The court also said there was no testimony regarding the victim's bedroom doorknob or if her door even had a doorknob.

**¶16**       Byers does not show or argue how preservation of these items would have any tendency to exonerate him.  Byers and M.H. lived in the same home, so the presence of his and her DNA on these items would have been neither exculpatory nor incriminating.  Additionally, M.H. testified that her eyes were closed during the assault, so she did not know whether Byers was wearing a belt, what he was wearing, or whether he used a condom.  Further, Byers fails to argue (let alone demonstrate) how the failure to preserve these items prejudiced him.  Therefore, we find there was no abuse of discretion.

## CONCLUSION

¶17     For the foregoing reasons, we affirm Byers' conviction and sentence.



AMY M. WOOD • Clerk of the Court
FILED:  AA