NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

JOHN AUSTIN LOPEZ, *Appellant.*

No. 1 CA-CR 19-0477
FILED 9-29-2020

Appeal from the Superior Court in Maricopa County
No. CR2015-145384-001
The Honorable Ronda R. Fisk, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Brian Coffman
*Counsel for Appellee*

The Law Office of Kyle T. Green, Tempe
By Kyle Green
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Cynthia J. Bailey delivered the decision of the Court, in which Presiding Judge Randall M. Howe and Judge Kent E. Cattani joined.

---

**B A I L E Y**, Judge:

¶1         John Austin Lopez appeals his convictions and sentences for discharge of a firearm at a structure, aggravated assault, and endangerment.  Lopez contends the superior court committed reversible error by refusing to give an adverse-inference instruction pursuant to *State v. Willits*, 96 Ariz. 184 (1964).  Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2         Seventeen-year-old Lopez and his ex-girlfriend D.V. attended a party at which D.V. and Lopez's sister got into a physical fight.  Lopez, too, joined the scuffle and at some point brandished a gun.  After the fight ended, someone fired one or more gunshots, causing Lopez and D.V. to each flee the party with their respective groups of friends and relatives.

¶3         D.V. drove back to her house with her cousin C.M., C.M.'s boyfriend A.C., A.C.'s friend T.C., and D.V.'s neighbor A.A.  Lopez and his group also drove to D.V.'s house in a separate vehicle.  When D.V. saw them nearing the house, her stepfather retrieved a handgun and told everyone to stay inside.  D.V.'s stepfather and mother—who were standing on the front porch—and A.C.—who was standing in the doorway—saw Lopez and another man get out of their vehicle and walk up to the driveway of D.V.'s house.  After D.V.'s stepfather yelled something to the effect of "hey, what are you doing; get away from my cars," Lopez and/or the other man began shooting.  One of the bullets grazed A.C.'s arm.  D.V.'s stepfather then fired a shot from his weapon into the air, at which point Lopez and the other man returned to their vehicle and drove away.

¶4         Law enforcement officers collected four shell casings from the street outside D.V.'s house and one spent bullet from the porch area.  The shell casings all appeared to have come from the same firearm, but the bullet was too badly damaged to be linked to any particular weapon.

¶5         The State tried Lopez on eleven counts relating to the shooting at D.V.'s house: one count of discharging a firearm at a structure,

three counts of aggravated assault pertaining to D.V.'s stepfather, mother, and A.C., and seven counts of endangering people inside the house—D.V., A.A., C.M., T.C., and three other members of D.V.'s family who were present that night.

¶6        At trial, Lopez defended against the charges on the theory that only one person shot at D.V.'s house and he was not that person. Lopez testified he left his gun in the car when he went to D.V.'s house and that the gun—which was apparently disposed of before it could be collected by law enforcement—was a .45 semiautomatic, which was incompatible with the .38 caliber shell casings recovered at the scene.

¶7        Jurors found Lopez guilty as charged, and found various aggravating circumstances proven. The verdicts do not make clear whether jurors found Lopez guilty as a principal—i.e., a shooter himself—or as an accomplice of the shooter.

¶8        The State also tried Lopez on three counts relating to events at the party: two counts of aggravated assault and one count of unlawful discharge of a firearm. Jurors found Lopez guilty of two counts of disorderly conduct—lesser-included offenses of the aggravated assault charges—and found him not guilty of unlawful discharge. Lopez does not challenge these convictions on appeal.

¶9        The superior court sentenced Lopez to concurrent prison terms, the longest of which was fifteen years for his conviction of discharging a firearm at a structure. Lopez timely appealed, and this court has jurisdiction under Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1), 13-4031, and 13-4033(A)(1).

## DISCUSSION

¶10        Lopez contends the superior court committed reversible error by denying his request for a *Willits* instruction, which allows jurors to draw an adverse inference against the State if they find it "lost, destroyed, or failed to preserve evidence whose contents or quality are important to the issues in th[e] case." Rev. Ariz. Jury Instr. ("RAJI") Stand. Crim. 42 (4th ed. 2016); *see also State v. Glissendorf*, 235 Ariz. 147, 149, ¶ 1 (2014); *Willits*, 96 Ariz. at 191.

¶11        When law enforcement officers examined D.V.'s house after the shooting, they found six possible bullet strikes. Two of the strikes appeared to show penetration by bullets that did not pass through the structures they hit. Neither the State nor Lopez sought to recover those two

bullets, which apparently remained embedded in an exterior wall in one case and an arch on the front porch in the other.

¶12         Lopez asked the superior court for a *Willits* instruction premised on the State's failure to extract the two bullets embedded in D.V.'s house.  He reasoned that if those bullets had been recovered, they might have been linked to the same firearm associated with the recovered shell casings, which would corroborate his testimony that there was only one shooter (who was using a different gun than the one Lopez claimed to possess that night).

¶13         The superior court denied Lopez's request for a *Willits* instruction, concluding he did not "show the State failed to preserve material and reasonably accessible evidence having a tendency to exonerate the defendant and that this failure resulted in prejudice."  In support of its ruling, the court pointed to expert testimony "regarding the likelihood of the recovery of the bullet[s], when bullets are actually recovered projectiles, and their testimony about what could be determined based on whatever projectile could have been recovered."  Lopez's expert had testified it would take "certainly more than an hour" to recover each bullet and there was "at least a 50 percent likelihood" the recovered bullets would be sufficiently "identifiable" to establish a link to a particular firearm.

¶14         We review the superior court's refusal to give a *Willits* instruction for an abuse of discretion.  *See Glissendorf*, 235 Ariz. at 150, ¶ 7.  The court did not abuse its discretion in this case.

¶15         To merit a *Willits* instruction, a defendant must establish: (1) the State "failed to preserve material and reasonably accessible evidence"; (2) such evidence "could have had a tendency to exonerate the accused"; and (3) "resulting prejudice."  *Id.* at ¶ 8 (internal quotation marks and citations omitted).  The superior court's ruling was correct in this case because Lopez did not show the State "failed to preserve" the evidence at issue.  *See* RAJI Stand. Crim. 42 (referring to evidence the State "lost, destroyed, or failed to preserve"); *State v. Perez*, 141 Ariz. 459, 464 (1984) (stating the appellate court is "obliged to affirm the trial court's ruling if the result was legally correct for any reason").  The two bullets apparently remained embedded in D.V.'s house and were therefore not lost, destroyed, or otherwise made unavailable by the State.  *See State v. Geotis*, 187 Ariz. 521, 525 (App. 1996) (no abuse of discretion in denying *Willits* instruction where "there was no showing that [the evidentiary items at issue] were rendered inaccessible to defendant for his later use").  The bullets remained available to be collected and examined at the time of trial, and the State had

no "affirmative duty" to recover the bullets "for the defense to use in corroborating the defense's *own* evidence." *State v. Rivera*, 152 Ariz. 507, 512 (1987). Additionally, because the prosecution alternatively argued accomplice liability, any evidence that the embedded bullets belonged to a second weapon would not have exonerated Lopez, but instead would have presumably made clear that both Lopez and the other man fired shots. *See Glissendorf*, 235 Ariz. at 150, 152, ¶¶ 9, 19. Lopez's appeal is without merit.

## CONCLUSION

**¶16**        Lopez's convictions and sentences are affirmed.

