NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

JOE MCKENZIE, *Appellant*.

No. 1 CA-CR 20-0317
FILED 6-15-2021

Appeal from the Superior Court in Maricopa County
No. CR2017-141324-001
The Honorable Katherine M. Cooper, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Michael Valenzuela
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Paul J. Prato
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Maria Elena Cruz delivered the decision of the Court, in which Presiding Judge Jennifer M. Perkins and Judge Randall M. Howe joined.

---

**C R U Z**, Judge:

¶1        Joe McKenzie appeals his convictions and sentences for two counts of aggravated harassment, one count of first-degree burglary, one count of disorderly conduct, one count of sexual assault, and one count of first-degree criminal trespass.  For the following reasons, we affirm.

**FACTUAL AND PROCEDURAL HISTORY**

¶2        McKenzie and C.M. were married in 1999 and had four children together: S.M., A.M., B.M., and K.M. ("the children").  During the marriage McKenzie was abusive towards C.M.  In 2017, she decided to separate from McKenzie.  McKenzie moved out of the family's home, and in May 2017 C.M. obtained an order of protection against him.

¶3        In July 2017, despite the order of protection, McKenzie asked to visit the children at C.M.'s home.  C.M. told him not to come over but he did anyway, and when C.M. returned from a trip to the grocery store she found McKenzie in the kitchen.  The children were at home.  C.M. told McKenzie to leave but he refused.  The two began arguing, and McKenzie grabbed C.M.'s backpack and walked out the front door.  C.M. followed him and they continued arguing in the front yard.  McKenzie threw the backpack at C.M.  He called C.M. a "fucking bitch," pulled a gun, racked it, and pointed it at C.M.  Eight-year-old K.M. tried to intervene, but McKenzie "stiff armed" her away from him.  K.M., ten-year-old B.M., and sixteen-year-old A.M. saw McKenzie point the gun at their mother.  A.M. put herself between the gun and C.M.  She asked her father to leave, and he finally did so.  C.M. called the police.

¶4        In August 2017, C.M. came home and found McKenzie in her bedroom with a gun.  He told her he was going to kill her and demanded that she retract her July 2017 report to police.  McKenzie told C.M. that if she called the police he would kill himself and C.M. because it was a "great day to die."  McKenzie demanded that C.M. have sex with him.  Although she refused and repeatedly told him to stop, McKenzie sexually assaulted

C.M. after pushing her down and pulling off her shorts. When C.M. screamed, McKenzie threatened to hit her. After the sexual assault McKenzie left through the bedroom sliding glass door. C.M. took a photograph of McKenzie as he fled her home. C.M. called a friend and told her McKenzie had sexually assaulted her at gunpoint. The friend called the police. C.M. submitted to a forensic exam and McKenzie's DNA was found on the genital swabs taken from C.M.'s vagina.

¶5        Two days after the sexual assault Gilbert police officers went to McKenzie's mother's home to serve a search warrant. They found McKenzie hiding in a neighbor's backyard with a gun to his head. After an hours-long standoff, police took McKenzie into custody.

¶6        The State charged McKenzie with first-degree burglary (count 1), aggravated assault (count 2), disorderly conduct (count 3), and aggravated harassment (count 4) for the July 2017 incident. The State charged him with first-degree burglary (count 5), aggravated assault (count 6), aggravated harassment (count 7), and sexual assault (count 8) for the August 29, 2017, incident. The State charged McKenzie with first-degree criminal trespass (count 9) for the August 31, 2017, standoff with police.

¶7        A jury found McKenzie guilty as charged on counts 4, 5, 7, 8, and 9 and found him guilty of a lesser-included offense of disorderly conduct on count 6. The jury was unable to reach a unanimous verdict on counts 1-3. The jury then found multiple aggravating factors. The superior court sentenced McKenzie to 2 years in prison for counts 4 and 7, 17 years in prison for counts 5 and 8, 2.25 years in prison for count 6, and 6 months in jail for count 9.

¶8        McKenzie timely appealed. We have jurisdiction pursuant to Arizona Revised Statues ("A.R.S.") sections 12-120.21(A)(1), 13-4031, -4033(A).

## DISCUSSION

I.    *Willits* Instruction

¶9        McKenzie first argues the superior court erred by refusing his request for a *Willits* instruction based on the State's failure to retain one of C.M.'s two iPhones, the iPhone 7. *See State v. Willits*, 96 Ariz. 184 (1964). A *Willits* instruction permits jurors to draw an adverse inference from the State's loss, destruction, or failure to preserve evidence if the State's explanation for the lost evidence is inadequate and the evidence is important to the issues in the case. Rev. Ariz. Jury Instr. ("RAJI") Stand.

Crim. 42 (Lost, Destroyed, or Unpreserved Evidence) (4th ed. 2016); *State v. Glissendorf*, 235 Ariz. 147, 151, ¶ 15 (2014).

¶10 We review a court's refusal to give a *Willits* instruction for an abuse of discretion. *State v. Fulminante*, 193 Ariz. 485, 503, ¶ 62 (1999). "To be entitled to a *Willits* instruction, a defendant must prove that (1) the state failed to preserve material and reasonably accessible evidence that could have had a tendency to exonerate the accused, and (2) there was resulting prejudice." *Glissendorf*, 235 Ariz. at 150, ¶ 8 (citations omitted). Speculation about how evidence might have been helpful to a defendant is not enough. *Id.* at ¶ 9. A defendant must show there is "a real likelihood that the evidence would have had evidentiary value." *Id.* The evidence need not have the potential to completely absolve the defendant, but it must be "potentially helpful" to the defense. *Id.* at ¶ 10. The defendant need not prove the State destroyed or lost evidence in bad faith. *State v. Hernandez*, 250 Ariz. 28, 32, ¶ 10 (2020).

¶11 McKenzie acknowledges that the State's forensic analyst downloaded the contents of C.M.'s iPhone 7 before returning the phone to police detective Krzak, who then possibly returned the phone to C.M. However, McKenzie asserts the police's failure to keep the iPhone 7 prevented him from having the phone examined by an independent expert who could have "attempt[ed] to recover the data missing from the iPhone 7 . . . evidence that *could* have supported his denial of the charges levied against him by [C.M.], and the State. Evidence that *could* have supported [McKenzie]'s belief that [C.M.] had set him up."

¶12 In January 2020, C.M. testified that neither the iPhone 6 she used until mid-August 2017 nor the iPhone 7, which she bought to replace the iPhone 6, had been returned to her. In February 2020, when arguing for a *Willits* instruction, defense counsel claimed the State had returned both of C.M.'s cell phones to her. The State argued that the police still had C.M.'s iPhone 6 and McKenzie had not requested to obtain data from the phone or have it analyzed by his own expert. The State agreed that C.M.'s iPhone 7 had been returned to her but argued the iPhone 7 had been returned only after "the analysis [of the iPhone 7] was completed and all of the information . . . obtained ha[d] been disclosed."

¶13 It is unclear from the record when C.M.'s iPhone 7 was returned to her. Even if the State returned the phone to C.M. before McKenzie had a chance to examine it, as he says he would have done, McKenzie cannot show that the State failed to preserve "material and reasonably accessible evidence" helpful to his defense. *See Glissendorf*, 235

Ariz. at 150, ¶ 8 (citation and internal quotation marks omitted). The State's forensic analyst Frank McCleary testified at length about the techniques he used to extract the data from C.M.'s iPhone 7. Besides phone call log entries, McCleary extracted 1777 text messages from C.M.'s iPhone 7. McKenzie had access to the State's extraction reports which, according to the testimony, included all of that data. In addition, C.M.'s uncontroverted testimony that she obtained the iPhone 7 during mid-August 2017 suggests that any text messages for the time period between July 1st and August 15th, 2017, would not have been made from the iPhone 7, but rather from the iPhone 6, which the police still had in its custody at the time of trial and McKenzie had never requested for examination. And if C.M. had, in fact, engaged in any text communication with McKenzie that supported his account of events, McKenzie would have also had access to those communications from his own mobile phone. Although McKenzie testified on his own behalf, he never offered any such text communications into evidence. McKenzie's speculation that the iPhone 7 "could have" contained additional evidence besides the evidence already extracted from the phone is not enough. *See Glissendorf*, 235 Ariz. at 150, ¶ 9. Because McKenzie fails to show a "real likelihood" that the iPhone 7 would have had evidentiary value, we find no abuse of discretion in the superior court's decision not to give the jury a *Willits* instruction. *See id.*

II.     Sufficiency of the Evidence – Aggravated Harassment

**¶14**         McKenzie next argues insufficient evidence supported his conviction for aggravated harassment (count 4). Viewing the evidence in the light most favorable to sustaining the convictions, we review de novo whether substantial evidence supported them. *State v. West*, 226 Ariz. 559, 562, ¶¶ 14-16 (2011). The relevant question is whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at ¶ 16 (citation and internal quotation marks omitted). In determining whether substantial evidence supports a conviction we consider both direct and circumstantial evidence. *Id.* We will not reweigh the evidence and we resolve all reasonable inferences against the defendant. *State v. Lee*, 189 Ariz. 608, 615 (1997). "To set aside a jury verdict for insufficient evidence it must clearly appear that upon no hypothesis whatever is there sufficient evidence to support the conclusion reached by the jury." *State v. Arredondo*, 155 Ariz. 314, 316 (1987). Stated differently, "[r]eversible error based on insufficiency of the evidence occurs only whe[n] there is a complete absence of probative facts to support the conviction." *State v. Soto-Fong*, 187 Ariz. 186, 200 (1996) (citation omitted). We will not assess the credibility of witnesses because it is "for the jury to

weigh the evidence and determine the credibility of the witnesses." *State v. Williams*, 209 Ariz. 228, 231, ¶ 6 (App. 2004).

¶15        "A person commits harassment if, with intent to harass or with knowledge that the person is harassing another person, the person . . . contacts [or] communicates . . . with another person . . . in a manner that harasses."   A.R.S.   §   13-2921(A)(1).   "A person commits aggravated harassment if the person commits harassment as provided in § 13-2921 and . . . [a] court has issued an order of protection . . . against harassment against the person and in favor of the victim of harassment and the order . . . has been served and is still valid."   A.R.S. § 13-2921.01(A)(1).  "Harassment" is "conduct that is directed at a specific person and that would cause a reasonable person to be seriously alarmed, annoyed or harassed and the conduct in fact seriously alarms, annoys or harasses the person."   A.R.S. § 13-2921(E).   Here, the State charged in count 4 that on July 31, 2017, McKenzie "with intent to harass or with knowledge that he was harassing" C.M. communicated or caused a communication with her in a manner that "harassed or threatened," and C.M. had a valid, served order of protection against him.

¶16        Sufficient  evidence  supported  McKenzie's  conviction  for aggravated  harassment.   C.M. obtained an order of protection against McKenzie and served it on him in May 2017.   The order prohibited McKenzie from contacting C.M. in person or going to her home.  McKenzie testified that he violated the order of protection when he went to C.M.'s home on July 31, 2017.  The record also shows that McKenzie went to C.M.'s home while C.M. was at the store despite knowing C.M. did not want him to come over, and then got into an argument with her.  He grabbed her backpack admittedly to be a "jerk" or an "asshole."  McKenzie continued arguing with C.M. in the front yard in front of A.M., K.M., and B.M., and threw the backpack at her.  McKenzie then pointed a gun at C.M., racked it, and called her a "fucking bitch."

¶17        McKenzie argues the evidence was insufficient for count 4 because the jury did not agree on whether he had a gun on July 31, 2017, and for that reason could not reach a verdict on counts 1-3. We disagree.  A rational trier of fact could find, based on the evidence, that McKenzie pointed a gun at C.M.  She and K.M., B.M., and A.M. all testified that they saw the gun.  Even if we were bound by a jury finding that McKenzie did not possess a gun on July 31, neither McKenzie's possession nor use of a gun are elements of the offense of aggravated harassment and the evidence cited *supra* paragraph 16 was sufficient to support the conviction.

## CONCLUSION

**¶18**      For the foregoing reasons, we affirm McKenzie's convictions and sentences.



AMY M. WOOD • Clerk of the Court
FILED:      AA