NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

FRANK JARVIS ATWOOD,
*Plaintiff/Appellant*,

v.

CHARLES L. RYAN,
*Defendant/Appellee*.

No. 1 CA-CV 20-0298

FILED 2-9-2021

Appeal from the Superior Court in Maricopa County
No.  CV2019-095666
The Honorable Janice K. Crawford, Judge

**AFFIRMED**

COUNSEL

Frank Jarvis Atwood, Florence
*Plaintiff/Appellant*

Arizona Attorney General's Office, Phoenix
By Michael E. Gottfried
*Counsel for Defendant/Appellee*

---

**MEMORANDUM DECISION**

Judge James B. Morse Jr. delivered the decision of the Court, in which Presiding Judge D. Steven Williams and Judge Jennifer B. Campbell joined.

---

**M O R S E**, Judge:

¶1        Frank Jarvis Atwood appeals from a court order declining jurisdiction over his petition for special action ("Petition"). Because Atwood has shown no error, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2        Atwood is an inmate at the Arizona Department of Corrections ("ADOC"). On June 1, 2019, Atwood received a visit from his wife and a private investigator. During the visit, a corrections officer overheard Atwood describe the details of the route ADOC takes to transport Atwood to reoccurring physical therapy appointments in Tucson. The corrections officer placed Atwood on disciplinary report for conspiracy to attempt a prison escape. ADOC classifies "escaping, or attempting to escape" as a Class A disciplinary violation. Arizona Department of Corrections Department Order ("ADOC Order") 803, No. 08A. Conspiring to escape is also classified as a Class A offense. *See* ADOC Order 803, No. 07A (defining conspiracy to commit a Class A offense as a Class A offense).

¶3        On June 3, ADOC filed a formal disciplinary report charging Atwood with "Conspiracy to Commit a Class A Offense." Atwood pled not guilty. After a hearing on June 19, a disciplinary hearing officer ("DHO") found Atwood guilty of the charged offense. Atwood received a penalty of 90-days parole class III, 30-hours extra duty, 30-days loss of privileges, 30-days loss of visitation, and forfeiture of 120 earned-release credits. On June 19, ADOC provided Atwood a copy of the "Result of Disciplinary Hearing" form. The form listed the DHO's finding and indicated the DHO relied on information reports and the disciplinary report. No witness statements were used or denied during the disciplinary hearing.

¶4        Atwood appealed to the warden. The warden upheld the disciplinary decision, noting the information presented showed that Atwood was "heard and observed giving information to [his] visitor about the route taken, traffic and construction issues on the way to a reoccurring

2

off site medical appointments [sic] and was observed tracing the route taken to the appointment on the visitor[']s leg."

¶5        Subsequently, Atwood was "referred for a Classification Review and Hearing to determine whether [he] should be placed at maximum custody institution . . . , due to resent [sic] disciplinary violation where . . . Atwood was found guilty of conspiracy to commit a class A felony[,]" and discipline for "disrespect to staff" after the Class A violation. On July 21, Atwood wrote a letter to "Central Office Classification" appealing his classification to maximum custody. The record is silent as to the outcome of the appeal.

¶6        Atwood filed his Petition with the superior court asserting "atypical and significant hardships" from prison conditions, insufficient evidence to support the June 19 disciplinary decision, and due process violations by ADOC. Atwood requested expungement of the disciplinary report and reclassification from maximum-custody to close-custody status "with all previously enjoyed privileges." Alternatively, Atwood requested an evidentiary hearing and a jury trial to review whether ADOC violated his due process rights.

¶7        Former ADOC Director Charles Ryan urged the superior court to decline jurisdiction over Atwood's Petition, arguing Atwood's claims did not warrant special-action relief. Alternatively, Ryan argued the court should dismiss the Petition because ADOC did not violate Atwood's constitutional rights.

¶8        The superior court issued a minute entry declining special-action jurisdiction and ordering the dismissal of Atwood's Petition. The superior court denied Atwood's motion for reconsideration and entered judgment for Ryan.

¶9        Atwood timely appealed. We have jurisdiction over the appeal under A.R.S. § 12-2101(A)(1).

## DISCUSSION

### I.    Standard of Review.

¶10        Because the superior court did not accept jurisdiction of the Petition, our review is limited to whether the court abused its discretion in declining jurisdiction. *Bilagody v. Thorneycroft*, 125 Ariz. 88, 92 (App. 1979). An abuse of discretion is "discretion manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." *Quigley v. City Ct. of City*

*of Tucson*, 132 Ariz. 35, 37 (App. 1982). When reviewing for an abuse of discretion, we "only intervene where no evidence exists to support the decision." *Bishop v. Law Enf't Merit Sys. Council*, 119 Ariz. 417, 421 (App. 1978).

**¶11** Courts generally accept jurisdiction over a special-action petition "where the issues raised in the petition are such that justice cannot be satisfactorily obtained by other means," *King v. Superior Court*, 138 Ariz. 147, 149 (1983), or where "no 'equally plain, speedy, and adequate remedy by appeal' exists," *Home Builders Ass'n of Cent. Ariz. v. Kard*, 219 Ariz. 374, 381, ¶ 32 (App. 2008) (quoting Ariz. R.P. Spec. Act. 1(a)). "The denial of special action relief is a discretionary decision for the superior court which will be upheld for any valid reason disclosed by the record." *State ex rel. Dean v. City Ct. of City of Tucson*, 123 Ariz. 189, 192 (App. 1979).

## II. Sufficiency of Evidence.

**¶12** Atwood asserts that the superior court should have accepted jurisdiction over his Petition because there was no evidence supporting ADOC's disciplinary decision. We disagree.

**¶13** In prison disciplinary proceedings, the revocation of earned-release credits satisfies the requirements of due process "if some evidence supports the decision by the prison disciplinary board . . . ." *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985). "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455-56.

**¶14** Atwood admits that he spoke with visitors about construction "bringing traffic to a crawl . . . which caused tardiness to the [physical therapy] appointment on May 30." Atwood also admits he told visitors "the fact of construction and/or traffic on a prior medical transport," but argues that "[t]he mention of where traffic/construction on one transport occurred cannot tip off anyone . . . what route a future transport may take."

**¶15** Atwood's admission, along with the disciplinary report, constitute "some evidence" supporting the disciplinary decision. *See Cook v. Ryan*, 249 Ariz. 272, 277, ¶ 21 (App. 2020) (finding a correctional officer's disciplinary report was sufficient evidence to support disciplinary decision); *see also McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999) (finding disciplinary report provides some evidence for disciplinary

decision).  Even if a different interpretation could have been drawn from Atwood's conversation, because some evidence supports the decision, he has not established that the superior court abused its discretion in declining special-action jurisdiction.  *See Quigley*, 132 Ariz. at 37 ("A difference in judicial opinion is not synonymous with 'abuse of discretion.'").

## III.    Due Process.

¶16        Atwood argues the superior court should have accepted jurisdiction over his Petition because ADOC deprived him of due process. Although our review is limited to whether the trial court abused its discretion by declining to accept jurisdiction over Atwood's Petition, determining whether an abuse of discretion occurred requires us to briefly consider the merits of Atwood's due process claims.

¶17        Because Atwood's disciplinary hearing resulted in the forfeiture of earned-release credits, Atwood was entitled to receive: "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action."  *See Hill*, 472 U.S. at 454.  To show reversible error, Atwood must demonstrate prejudice.  *See Cook*, 249 Ariz. at 275-76, ¶ 10.

¶18        Atwood appears to challenge the adequacy of the written notice of the disciplinary charges, arguing that ADOC's failure to allow him to review evidence prior to the hearing prevented him from being able to "know/understand the evidence at issue and to construct a defense[] . . . ." However, ADOC served Atwood with a copy of the "Inmate Disciplinary Report" on June 3, as acknowledged by Atwood's signature.  The disciplinary report informed Atwood of the circumstances of the alleged violation, stating that "[o]n 06/01/2019 at approximately 0930 hours as [the sergeant] observed [Atwood's] contact visit with Rachel Atwood and John Ryan, heard [inmate] Atwood give details of the route that transportation takes when he is transported to Tucson."  Providing Atwood with the disciplinary report on June 3—more than two weeks before the disciplinary hearing scheduled for June 19—satisfied due process.  *See Hill*, 472 U.S. at 454; *see also Wolff v. McDonnell*, 418 U.S. 539, 564 (1974) ("At least a brief period of time after the notice, no less than 24 hours, should be allowed to the inmate to prepare for the appearance before the Adjustment Committee").

**¶19**         Atwood also challenges the adequacy of the written statement explaining the disciplinary decision.  On June 19, ADOC provided Atwood with the "Result of Disciplinary Hearing" form, which indicated that the DHO relied on "Information Reports" and the "Disciplinary Report" in finding Atwood guilty of a Class A offense.  Atwood argues the form was insufficient.  We disagree.  ADOC provided Atwood with "a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action."  *See Hill*, 472 U.S. at 554.  The "Result of Disciplinary Hearing" form clearly indicated the evidence the DHO relied upon and listed "07A" as the charge against Atwood.  A more detailed explanation was not required.  *See Montgomery v. Whidbee*, 446 F.Supp.3d 306, 318 (M.D. Tenn. 2020) (finding prisoner's allegation that he was not provided a "detailed" explanation for prison's disciplinary action fell short of stating a plausible due process claim because he did not allege that he "was deprived of a written explanation altogether").

**¶20**         Atwood further claims that ADOC denied him due process by refusing to call witnesses on his behalf and not allowing him access to the information reports and a video recording of the incident.  The "Results of Disciplinary Hearing" form did not indicate that any video was used as evidence against Atwood.  And it is unclear from the record whether Atwood requested access to the information reports and video recording prior to the disciplinary hearing.  Moreover, the record is also mixed as to whether Atwood actually submitted witness-request forms prior to the disciplinary hearing.  Atwood claims he submitted three witness-request forms, but the alleged forms are not found in the record, and the "Result of Disciplinary Hearing" form indicates that no witness statements were used or denied.

**¶21**         Regardless, Atwood fails to show how any of the allegedly excluded evidence would have had a tendency to exonerate him.  *See State v. Glissendorf*, 235 Ariz. 147, 150, ¶ 9 (2014) ("To show that evidence had a 'tendency to exonerate,' the defendant must do more than simply speculate about how the evidence might have been helpful.").  Atwood does not dispute that he described details of his travel route, including traffic and construction information, to his visitors.  Thus, neither the video recording of the visit, the information reports, nor witness testimony would materially change the facts found by the DHO.  Instead, Atwood speculates that they could have changed the DHO's conclusion drawn from those facts.  Such speculation is insufficient, *id.*, and any hypothetical error is harmless, *see Piggie v. Cotton*, 344 F.3d 674, 678 (7th Cir. 2003) (rejecting alleged due process violation based on harmless-error analysis because inmate failed to

explain how excluded testimony would have aided in his defense against disciplinary charges).

## IV. Miscellaneous Claims.

### A. Alleged Falsification and Retaliation.

¶22 Atwood alleges that ADOC falsified the disciplinary charge against him in retaliation for pursuing post-conviction relief, litigating a civil-rights complaint against ADOC, and contravening ADOC's policy regarding the manner of storing his criminal case file. Atwood attempts to reveal a pattern of retaliation by making various allegations of misconduct on the part of ADOC. However, Atwood admits that he commented on traffic and construction details encountered on his transportation route.[1] Thus, Atwood fails to show that ADOC falsified the disciplinary charges against him or that he was disciplined for improper reasons.

### B. Atypical and Significant Hardships.

¶23 Atwood argues that his classification to maximum-custody status and housing in a cell without handicap bars imposed an "atypical and significant hardship" relative to the ordinary incidents of prison life. *See, e.g., McKune v. Lile*, 536 U.S. 24, 37 (2002) ("[C]hallenged prison conditions cannot give rise to a due process violation unless those conditions constitute 'atypical and significant hardship[s] on [inmates] in relation to the ordinary incidents of prison life.'" (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). The superior court did not abuse its discretion in declining jurisdiction because these claims can be resolved in a standard civil lawsuit. *See, e.g., Ramirez v. Galaza*, 334 F.3d 850, 852 (9th Cir. 2003) (concluding that inmate's challenge of his segregated confinement as a potential atypical and significant hardship was cognizable under 42 U.S.C. § 1983). Therefore, Atwood had access to a "plain, speedy, and adequate remedy at law" to seek redress for his claims. *See Neary v. Frantz*, 141 Ariz. 171, 178, (App. 1984) (finding special-action petition was "an inappropriate vehicle" for First Amendment claims where appellant had cause of action under 42 U.S.C. § 1983).

---

[1] Atwood also admits that he pursued "an alternative" method of storing his criminal case file materials, despite warnings that such conduct would result in discipline.

**CONCLUSION**

**¶24**        Because of (i) the existence of some evidence to support the disciplinary decision; (ii) the lack of merit to Atwood's due process claims; and (iii) the availability of an adequate alternative remedy for Atwood's claims concerning his prison conditions, the superior court did not abuse its discretion in declining special-action jurisdiction. We affirm the superior court's order.



AMY M. WOOD • Clerk of the Court
FILED:    AA